(No. 20403.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ISACH BARBER, Plaintiff in Error.

*Opinion filed December 18, 1930.*

J. W. Templeman, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Hugh Green, State's Attorney, and S. S. DuHamel, for the People.

Mr. Justice Farmer delivered the opinion of the court:

James Ambrose and Isach Barber were jointly indicted by the grand jury of Morgan county for the burglary of a tool shed belonging to Lora Braner and the larceny therefrom of a screw-jack and switch key to a Dodge automobile, valued at $2.50. Ambrose pleaded guilty. Barber, the other defendant, entered a plea of not guilty, was tried before a jury, convicted and sentenced to imprisonment in the State reformatory at Pontiac, his age being eighteen years. He brings the case here for review by writ of error.

Defendant. while in the custody of the sheriff made a written sworn statement, part of which was admitted in evidence over his objection, and the admission of it is assigned as error. Further errors assigned are, that the court admitted incompetent evidence, that the verdict of the jury was not warranted by the evidence, and that the State's attorney made statements during the trial which were highly prejudicial to defendant.

The first count of the indictment charged that Isach Barber and James Ambrose on the 29th day of December, 1929, unlawfully, feloniously, burglariously, willfully and maliciously broke and entered with force a certain building, to-wit, a tool house of Lora Braner, with intent to steal and carry away one Dodge automobile switch key of the value of fifty cents and one screw-jack of the value of two dollars, and that they did steal and carry away said personal property. The second count charges them with entering without force the tool house building of Lora Braner with intent to steal chattels and property of Lora Braner, and that they did steal and carry away a Dodge

automobile switch key of the value of fifty cents and one screw-jack of the value of two dollars.

The proof showed that the shed or building of Lora Braner, who lived on a farm about six miles northeast of Jacksonville, in Morgan county, was forcibly broken into during Saturday night, December 28, 1929, and the switch key of her Dodge automobile and the screw-jack were stolen therefrom. John Ray and his wife were visiting at the house of Mrs. Braner on the night of the burglary. The next morning Ray and Mrs. Braner discovered the tool shed had been broken open and the switch key and screw-jack belonging to Mrs. Braner's Dodge car had been stolen. Ray had also placed his Ford car in the same tool shed, and the switch key of Ray's car and some other property in it were stolen at the same time. Defendant and Ambrose were arrested for the crime and later Ambrose confessed.

On the trial of defendant the People offered in evidence a signed and sworn statement made by him. It was objected to by defendant, and a hearing was had in the absence of the jury as to its competency. The sheriff testified that after defendant and Ambrose were arrested, and about the fourth of January, defendant was in jail and told him about the case. He could not remember how the talk started, but he told defendant that he had recovered the screw-jack from Ambrose and that Ambrose had confessed. The sheriff testified he never told defendant to make the statement and never told him it would go easy with him if he did. He went with defendant to the State's attorney's office and the statement was made there in the presence of Louise Trahey, the stenographer; Agnes Shields, the notary public; the State's attorney; the sheriff, and his deputy, Frank Todd. The sheriff reiterated that he made defendant no promises and gave no indications that it would be better for him to confess. All he said was defendant had just as well come across and tell the truth, but he never

did promise him that it would be better for him to do so. The deputy sheriff, Frank Todd, corroborated the testimony of the sheriff. The stenographer in the State's attorney's office took down what defendant said. The deputy testified all he or the sheriff said to defendant was that if he did not tell the truth to tell nothing. The confession was typewritten by the stenographer, signed by defendant and sworn to by him before a notary public. Defendant testified that he asked for an attorney, but the sheriff would not get the attorney he called for; that the sheriff took him to the office of the State's attorney, told him all about Ambrose, and told him if he would confess he would see that it went light for him, as he wanted to get Ambrose. He testified he made the statement freely and voluntarily after the sheriff told him what he would do; that the sheriff said he would see that it caused defendant no trouble. He testified he had previously seen the statement, which was marked "P-1," and that it had his signature on it and was sworn to by him before a notary public. The deputy sheriff further testified that defendant never asked for an attorney in the State's attorney's office; that he asked for one before he went to the State's attorney's office, and the deputy told him that the attorney he asked for could not follow him through the court.

The court, over defendant's objection, admitted part of the written statement. The part admitted by the court is as follows:

"JACKSONVILLE, ILLINOIS, *January 4th, 1930.*
"State of Illinois, Morgan County.—*ss.*

"Isach Barber, being first duly sworn, on oath deposes and says that he is eighteen years of age, and he further makes a statement as follows: On Saturday night or Sunday morning, at about one A. M. on December 28th or December 29th, 1929, I was in Jacksonville and met Clarence Thies and told him that I was going out to see James Ambrose, and I asked him if he wanted to go along with me. He said that he did, and so we went to see James Ambrose, and he said that he wanted to get some stuff at some places, so we went to several places, first going to the place

of O. A. Braner, where we went into the shed, first prying off the lock, and we took from an automobile a switch key and a screw-jack and then took from another automobile an Indian blanket or robe, a tool kit, tire pump. It was my automobile that we used to go out to the place. I am making this statement of my own free will and accord, without any fear or threats of punishment being made against me and without hope or promise of reward being held out to me, but I am merely stating it as the truth so that the facts may be known, knowing that it may be used at any time, and I am willing that it shall be so used.

ISACH BARBER.

"Subscribed and sworn to before me this 4th day of January, A. D. 1930.                          AGNES SHIELDS, *Notary Public.*"

The warrant for the arrest was sworn out by Mrs. Lora Braner. She testified that she also went by the name of Mrs. O. A. Braner, which was her husband's name, and that she lived on an eighty-acre farm which she had owned five years. She discovered on Sunday morning, December 29, that her tool shed had been broken into and a screw-jack taken out. The switch key of her car was also taken out. She went to Ambrose's place and called for the property. She got the screw-jack but did not get the switch key. Ray testified that the next morning after the burglary they followed the car tracks until they lost track of them.

In the statement made by defendant, which was admitted as a confession, he said that on December 28 or 29 he was in Jacksonville and met Clarence Thies and told him he was going out to see James Ambrose and that Thies went along with him. When they arrived at Ambrose's house Ambrose said he wanted to get some stuff at some places, and they went to several places, first going to the place of O. A. Braner, where they went in the shed by prying off the lock and took from an automobile a switch key and a screw-jack and from another automobile an Indian blanket or robe, a tool kit and tire pump. It was defendant's automobile that was used to go to the places. A deputy sheriff testified he went out to Barber's house and obtained some other things he had in his possession after he

had been arrested. Defendant testified that he did not enter the tool house or garage; that he bought the Ford switch key from a junk dealer Monday morning, December 30, about eight or nine o'clock. He also bought some other property mentioned. The junk dealer called defendant out and asked him if he had any junk to sell. Defendant told him "no," and the junk dealer asked if he wanted to buy some coils, and he said the junk dealer sold them to him, also a calf-skin floor mat; that he asked if it was stolen, and the dealer said he knew nothing about it—that he bought it from some boy and that he got the switch key from the boy. He threw that in with the stuff defendant bought. A deputy sheriff came to defendant's house about January 5 inquiring of him if he had a skin floor mat, a set of coils and a switch key. He replied he had and gave them to the deputy sheriff. He said he had bought them from a junk dealer. Defendant further testified he was in Jacksonville on the afternoon and evening of December 28; that he left Jacksonville about ten and went home, about six miles; that after he arrived home he went to bed about eleven o'clock. His father and mother were at home. They had gone to bed when he got there. He slept in the same room with his father and mother, on a bed about eight feet from them. They saw him and talked to him. He went to sleep and awoke the next morning about 6:30, ate breakfast about seven and stayed around home. He testified that he did not know whether the key he turned over to the deputy sheriff was a car key or not; that it was not a door key. He testified that the reason he did not state in his written confession where he got the floor mat and coils was that the sheriff told him what to say in his statement. Defendant's father, with whom he lived, testified that defendant came home Saturday night, December 28; that he saw him about half-past nine o'clock, and that his wife was present. Defendant ate some supper, read a newspaper and went to bed about a quarter to ten. He slept in the same

room as witness and his wife. Witness said defendant got up about six o'clock Sunday morning, had breakfast at home and remained there all day. Witness' wife also testified to substantially the same thing. Defendant's father further testified that December 30 a junk dealer stopped at his house and he saw defendant buy some things from him, and that he bought some keys and a floor mat. The junk dealer said he got the stuff from some young man. He did not know the junk dealer but said that he looked like a Jew.

If the confession made by defendant was competent evidence it contradicts not only his statement but that of his father and mother. He testified that he arrived home from Jacksonville Saturday night between ten and eleven o'clock. The confession admitted in evidence was sworn to by him, and he said he was in Jacksonville late Saturday night and on Sunday morning about one A. M. Then his father and mother must have been mistaken about his being at home in bed before ten o'clock Saturday night. The sworn confession says it was made of defendant's free will, without any fear or threats of punishment and without hope or promise of reward, knowing that it might be used at any time against him and that he was willing it should be so used. He testified on the trial that he did not dictate the confession—that it was the sheriff who did it—and that he said what the sheriff told him to say and that the confession was untrue. The sheriff and his deputy in their evidence contradicted defendant about the circumstances under which the confession was made and what they said to him about making it. In *People* v. *Heide,* 302 Ill. 624, the court said, if an admonition to speak the truth was coupled with any expression importing that it would be better for the prisoner to do so the confession is not admissible, because it carries the inference that it would be better for the prisoner to say something than to remain silent. In the case at bar there was no inference that de-

fendant was under duress, and both the sheriff and the deputy testified they had not offered him any hope of reward or that it would be better for him to make the statement. The admissibility of the confession is determined by whether all the circumstances surrounding the making of it were such that the accused might have been induced therefrom to make a false confession. (*People* v. *Klyczek,* 307 Ill. 150.) The trial judge had before him the witnesses who were present when the written statement was made and was in position to determine the weight and credibility to be given the testimony of defendant, the sheriff and his deputy. The court admitted the confession, and we see no reason to disagree with that ruling and conclusion.

It is urged that the court erred in admitting evidence pertaining to other stolen property taken from the Braner tool shed at the time of the burglary. We think, under the facts and circumstances presented in the case, the admission of such evidence was not erroneous. *People* v. *Weisman,* 296 Ill. 156.

During the State's attorney's closing argument, in answer to an inquiry made by the defendant's counsel in his argument as to "Where is Ambrose?" the State's attorney said he would tell where Ambrose was; that he was in jail under a plea of guilty. Ambrose was not made a witness on the trial. Defendant objected to the State's attorney making the statement, and the court replied that as defendant's counsel had asked the question the State might reply to it. We see no error in the ruling. *People* v. *Fricker,* 320 Ill. 495.

It is insisted by defendant that there was a variance in the proof and the indictment as to the owner of the property. The indictment charged the shed burglarized and the property stolen were that of Lora Braner and the confession of the defendant states the place of the burglary was that of O. A. Braner. Lora Braner is a widow and testified she was also known as Mrs. O. A. Braner.

Finally it is insisted the evidence was not sufficient to warrant the verdict. We have not stated the evidence in detail but have read it and set out its most material parts. There is no merit in that assignment of error. The evidence was sufficient, if believed by the jury, to warrant the verdict, and this court will not substitute its judgment for that of the jury in weighing the credibility of witnesses where the testimony is conflicting. *People* v. *Binger,* 289 Ill. 582; *People* v. *Feinberg,* 237 id. 348.

The judgment is affirmed.           *Judgment affirmed.*