People of the State of Illinois, Plaintiff-Appellee, v. Harold L. Poole (Impleaded), Defendant-Appellant.

Gen. No. 51,860.

First District, Third Division.

March 5, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon M. Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant Harold Poole and one William Dunaway were jointly indicted for the crimes of robbery and aggravated battery. In a separate jury trial Poole was found guilty on each charge and sentenced to serve seven to fifteen years in the penitentiary on the charge of robbery, and seven to ten years on the charge of aggravated battery, both sentences to run concurrently. He seeks reversal and remandment on the following grounds: (1) that the trial court admitted prejudicial hearsay evidence, and (2) that the conduct of the Assistant State's Attorney during the trial was improper in that (a) he handed police reports to the defense counsel in the presence of the jury, (b) in his final argument he commented on the failure of the defense to call certain witnesses and (c) that he made several other prejudicial and inflammatory remarks in final argument. While the sufficiency of the evidence is not in issue, a summary of the testimony of the respective witnesses is necessary to an understanding of the issues involved.

Alvin Harris, the victim of the offense for which the defendant was tried, testified that on June 12, 1966, at approximately 3:00 a. m. he was walking south in the 6200 block of Kenwood Avenue in the City of Chicago. He was returning home after purchasing a bottle of vodka in a liquor store at the corner of 61st Street and Kenwood Avenue and as he walked along the sidewalk, two men approached him from the rear. One of them, whom he later identified as the defendant, struck him with his fist, prompting Harris to return the blow. Harris was knocked to the ground and kicked repeatedly. Just before he lost consciousness one of his assailants removed his wristwatch. Sometime later he regained consciousness through the efforts of police officers Campbell and Hunt, who had arrived on the scene. He realized that his wallet, keys and the bottle of vodka

had also been taken. The officers asked him what had happened and he answered that the two men, who were still present, had robbed him. Harris also testified that he remembered seeing both men in the vicinity of 63rd Street and Kenwood Avenue prior to the morning in question, but that they were not friends of his. He had not been drinking with them earlier in the evening nor had he associated with them that evening. At no time during the commission of the crime did he see more than two people and he denies that he was attacked by the Blackstone Rangers.

William Campbell, one of the police officers who responded to a call to go to 6221 Kenwood Avenue on the morning in question, testified that when he arrived on the scene there were three men present—Alvin Harris, who was bleeding profusely, the defendant Poole and one William Dunaway. The defendant was leaning against a nearby fence while Dunaway searched through one of the victim's shoes. Officer Campbell asked Harris what had happened and Harris replied by pointing to Dunaway and the defendant and saying, "they robbed me." The two men were arrested and searched. A wristwatch, a bottle of vodka and a set of keys, which Harris said were his, were found in Dunaway's possession. The defendant had a dollar bill and some change in his pocket. His left arm was bloodstained, the result he said of his efforts to assist Harris after he was beaten by the Blackstone Rangers. Later that day officer Campbell went to the victim's apartment and unlocked the apartment door with the keys he had taken from Dunaway. While officer Campbell was at the scene of the crime Harris told him that $120 had been taken from him, but he later admitted that only some "change" had been taken.

The testimony of officer Willie Hunt, officer Campbell's partner on the morning in question, corroborated all the material elements of officer Campbell's testimony, that only three men, Harris, Dunaway and the

236

defendant, were present when he and Campbell arrived at the scene of the crime, that the defendant had blood on his left arm and that Harris identified the defendant and Dunaway as his attackers. He also testified that defendant told him that Harris had been attacked by a group of Blackstone Rangers.

The only evidence offered on behalf of defendant was his own testimony. On direct examination he testified that in 1956 he had been convicted of the sale of a narcotic drug and of burglary. He further testified that at approximately 2:30 a. m. on the morning in question he and Dunaway saw Harris intoxicated in a neighborhood lounge, that a short time later defendant left the lounge and met two men, White and Morris, at the corner of 63rd Street and Kenwood Avenue. Dunaway followed several minutes later. About 3:00 a. m. Harris also left the lounge, approached Dunaway and asked whether he could borrow fifty cents so they could buy a half-pint of vodka. Dunaway loaned him the money and they bought the vodka. As they were walking south in the 6200 block of Kenwood Avenue they finished drinking the vodka, whereupon defendant and Dunaway left Harris and went to another lounge to buy more liquor. When they returned, a group of four or five people "scattered," leaving Harris on the sidewalk beaten and robbed. Defendant further testified that he dragged Harris from the middle of the sidewalk to a staircase leading to the porch at 6221 Kenwood Avenue and propped him up on the stairs.

In support of charge (1) that prejudicial hearsay evidence was admitted, defendant argues that it was error to permit officers Campbell and Hunt to testify that they heard Harris at the scene of the crime identify the defendant as one of his assailants. The record shows however that Harris had previously testified to the identification himself. Moreover, during the course of his direct examination defendant testified that while at the

237

scene of the crime he heard officer Campbell ask Harris if he (defendant) and Dunaway had robbed him and that Harris has responded by nodding his head, "Yes."

As a general rule a witness may not testify to a prior identification of an accused made by another person. People v. Denham, 41 Ill2d 1, 241 NE2d 415; People v. Reeves, 360 Ill 55, 195 NE 443. Such testimony has been held to be hearsay and therefore inadmissible. People v. Krejewski, 332 Ill 120, 163 NE 438; People v. Lukoszus, 242 Ill 101, 89 NE 749. An out-of-court assertion is hearsay and therefore inadmissible when it is offered to prove the truth of the matter asserted therein and thus rests for its value on the credibility of the out-of-court asserter. People v. Carpenter, 28 Ill2d 116, 121, 190 NE2d 738, 741; People v. Hannah, 54 Ill App2d 218, 223, 203 NE2d 764, 766. The fundamental purpose of the rule against hearsay is the exclusion from evidence of those out-of-court assertions whose real value cannot be determined because the source of the assertion cannot be cross-examined by the party against whom it is being offered. People v. Carpenter, supra; People v. Burks, 105 Ill App2d 112, 245 NE2d 120; Wigmore on Evidence, § 1362 (3rd ed, 1940). Hence it is the opportunity for cross-examination of the out-of-court declarant, whose assertion is being offered, that is the essential feature without which the assertion must be rejected. People v. Carpenter, supra; People v. Burks, supra. See, also, Uniform Rules of Evidence rule 63(1); Model Code of Evidence rule 503(b). In the instant case Harris, the State's first witness, testified that on the night of the crime he identified defendant and another as his assailants. He confronted defendant in court and was thoroughly cross-examined. Defendant's counsel thus had the opportunity to test the witness's perception, his memory and veracity both as to his previous statement and his testimony given on direct examination, thereby enabling the jury to deter-

mine the real value of Harris's out-of-court assertion. The risks which would otherwise accompany the admission of an out-of-court assertion are not here present and therefore the rule against hearsay is not applicable to the police officers' testimony with respect to the victim's assertion that defendant had robbed him. See, Wigmore on Evidence, § 1130 (3rd ed, 1940); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv L Rev 177, at 192, ff.; cf. People v. Paradise, 30 Ill2d 381, 196 NE2d 689.

 Defendant next contends (2a) that the prosecutor acted improperly when he handed the police reports to his counsel in the presence of the jury. He argues that he had to use the report or appear to be hiding something from the jury. Although not pointed out in defendant's brief, the record shows that counsel for the defense while cross-examining officer Campbell asked him if such a report had been made and upon receiving an affirmative answer asked the witness whether he had a copy. Before an answer was given the prosecutor said, "Let the record indicate I am furnishing to counsel two documents, one entitled Robbery Case Report and the other one entitled Investigator's Report, Investigator's Case Summary Report." No objection was made by defense counsel. The prosecutor made no mention of these reports at any other stage in the proceedings nor does it appear that the reports were requested any time prior to the above colloquy. Under those circumstances it was proper for the prosecutor to tender the police reports in the presence of the jury. People v. Sanford, 100 Ill App2d 101, 241 NE2d 485; People v. Bickham, 91 Ill App2d 465, 235 NE2d 400.

Defendant also contends (2b) that the prosecutor in his final argument to the jury improperly commented on defendant's failure to call two witnesses. During direct examination the defendant testified that he left the Easy Lounge a little after 2:00 a. m. on the morning of June 12,

1966 and walked to the corner of 63rd Street and Kenwood Avenue, where he met a Mr. Horace White and a Mr. Morris. A few minutes later Dunaway joined them. Some time later Harris approached the four men and asked Dunaway for "fifty cents on a half a pint of vodka. Dunaway gave him the money and Harris, Dunaway and the defendant crossed the street and bought a half-pint of vodka. Neither White nor Morris were called by the defense. In his closing argument the prosecutor said:

> "Well, counsel for the defendant has the power to subpoena. He has the power to compel the attendance of witnesses on behalf of his cause, of the defendant's cause, yet where is Mr. Horace White, the man that Poole says was standing on the corner there? There is another party that Mr. Poole has referred to who was present at this time. Where is he? He hasn't testified. Counsel could have had him here."

■ Defendant contends it is reversible error for the prosecutor to suggest to the jury that an adverse inference may be drawn from defendant's failure to call a witness unless it is clear that the witness was not accessible to the State and that the defendant was capable of producing him. In People v. Williams, 40 Ill2d 522, 240 NE2d 645, the Supreme Court considered the scope of permissible comment by the prosecutor on the defendant's failure to call a witness or produce evidence and the court said (p 529):

> "[I]t is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so

■■■■■■■

is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution."

In further elaboration the court said that in the absence of an express prohibition every fact which is not improperly before the jury and which may reasonably influence their judgment is a proper subject of comment in argument. In the instant case the defendant's testimony and that of the victim is in conflict as to events leading up to the attack. If we accept defendant's version, the testimony of Morris and White would refute the testimony of the victim and corroborate that of the defendant. There may have been some reason for the defendant's failure to subpoena those two men and put them on the witness stand, but none was given. The prosecutor did not argue that the testimony of Morris and White would have been adverse to defendant. Rather, he was pointing out the uncorroborated nature of defendant's testimony. There was other evidence of defendant's guilt and it does not appear that the State relied on his failure to call those witnesses as substantial proof of the offenses charged. See also, People v. Lion, 10 Ill2d 208, 139 NE2d 757.

■ ■ Finally, defendant contends (2c) that the prosecutor made several prejudicial and inflammatory remarks in his closing argument. He cites four separate instances in which he was characterized as a "jackal." No objection was made to that comment. The assignment of error may still be considered however if the argument is so seriously prejudicial as to prevent the defendant from receiving a fair trial. People v. Mackey, 30 Ill2d 190, 195 NE2d 636. The remark in question is somewhat beyond the limits of propriety in legal argument, but considered in the light of the entire record the defendant received a fair trial and his guilt

was established beyond a reasonable doubt. The judgment is accordingly affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.