THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANTON HOGGS, Defendant-Appellant.

(No. 58495;

First District (3rd Division)—January 10, 1974.

Paul Bradley, Deputy Defender, of Chicago (Kenneth L. Jones, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Stanton Hoggs, was charged with aggravated assault (Ill. Rev. Stat. 1971, ch. 38, par. 12—2) and burglary (Ill. Rev. Stat. 1971, ch. 38, par. 19—1). A jury found him not guilty of burglary but guilty of aggravated assault, and he was sentenced to four to five years in the penitentiary.

The defendant's contentions are two: first, the final arguments of the prosecuting attorneys prejudiced the jury and deprived him of a fair trial; second, his sentence should be reduced to conform with the Illinois Unified Code of Corrections, Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001 —1—1 *et seq.*

At 6:00 A.M. on June 13, 1971, Ann Elizabeth Ward was sleeping in her first floor apartment at 6506 South King Drive, Chicago. She awoke to find Hoggs preparing to leave her bedroom through an open window. Noticing that she had awakened, he told her, "Be cool, I'm leaving." However, as he crawled out the window, he was confronted by a policeman with a drawn gun. The officer, who had responded to a radio report that a suspicious man had been seen prowling about the premises, said that Hoggs appeared to be carrying an object which was black and about 18 inches long.

Hoggs hastily withdrew into the room and ran through the apartment. Finding all exits blocked, he returned to Miss Ward's room. He threatened to beat her if she did not comply, ordered her out of bed, seized her about the neck, and directed her to shout to the police that she was in the room with him. He warned the police not to attempt to enter, or he would hurt the woman. For approximately three hours he held her and her younger brother, who also had been sleeping in the room, as hostages, while police reinforcements, fire equipment, and a large crowd of onlookers gathered outside. Hoggs took an empty wine bottle from a collection on Miss Ward's dresser, and brandished it at her. At one point he hit her on the forehead with it. Still later, after breaking the bottle, he held it to her neck and threatened to cut her, and sometime during the morning did inflict a gash. He asked the police to supply him with a gun and a car, but both requests were refused. Repeatedly, at his request, the area was cleared. At 7:30 A.M. he permitted the woman's younger brother to leave. At 9:30 five officers entered the apartment and approached Hoggs with guns drawn. They backed him against a wall and, despite his threats to cut his hostage, wrested the bottle from his hand.

At his trial Hoggs did not deny the events which transpired in Miss Ward's home. He explained that the night before he bought and consumed drugs and alcohol, including "acid" or "LSD," red and white capsules ("Trees"), two quarts of beer and a quantity of wine; that he began to sweat and felt strange sensations, as if his body was "getting ready to arise." He claimed that he could not remember entering the apartment, nor what he had done there before being discovered. He stated his first recollection was hearing a click and looking into the barrel of a gun as he was in the window. He said he did not remember taking any object or having one in his hand as he climbed out the window.

Hoggs' brother and four longtime friends testified that they had seen him at various times during the night before his arrest. They described him as appearing fidgety, nervous, sweating, high and intoxicated. An arresting officer also attested to his agitated condition when taken into

custody. In rebuttal, the State introduced evidence of his prior conviction for burglary.

■■ The defendant contends that in the closing arguments the prosecution exceeded the bounds of fair comment by quoting and misquoting trial testimony, expressing personal opinions unsupported by evidence, improperly using the evidence of his prior conviction, and attacking the good faith of defense counsel and defense strategy. The State responds that the defendant waived all but one of the complained-of excesses by failure to object to them. As a general rule, where no objection is made to an improper argument it will not be considered by a court of review. However, when the argument is so prejudicial that it prevents a defendant from receiving a fair trial it will be considered even though an objection was not raised at the trial. (*People v. Payton* (1967), 82 Ill.App. 2d 51, 227 N.E.2d 87.) In order to ascertain whether an argument is prejudicial, it is necessary to examine the offending remarks in the context of the entire record. (*People v. Poole* (1970), 121 Ill.App.2d 233, 257 N.E.2d 583.) Having done this, we conclude that the defendant was not deprived of a fair trial and that only two facets of the allegedly improper argument merit comment.

In the State's opening argument, one of the prosecutors reviewed the evidence. In doing so, he repeatedly highlighted testimony unfavorable to the defendant by employing a format of questions and answers akin to that by which the testimony was first elicited. The printed record thus suggests the possibility that he may have been reading from either the trial transcript or his personal notes. Typically, he would begin in narrative form, lapsing into questions and answers which, when compared to the report of proceedings, amount to a rough paraphrasing of the actual testimony. However, at certain points the testimony was misrepresented, most damagingly in three references to threats by the defendant to "kill" Miss Ward if the police entered the apartment. The word "kill" does not appear in the recorded testimony.

■■ Reading from a trial transcript or from a memorandum of the testimony during closing arguments is improper. The jury must pass upon the whole testimony free of the over-emphasis given any portion of it by verbatim repetition during the trial's waning moments. (*People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859; *People v. Smith* (1969), 105 Ill.App.2d 8, 245 N.E.2d 23.) But the prohibition does not extend to paraphrased recapitulation of testimony, where the prosecutor has merely refreshed his recollection from his own minutes. (*People v. Birger* (1928), 329 Ill. 352, 160 N.E. 564.) From the record we cannot tell whether the prosecutor read from any document, much less the transcript, when he summarized the testimony, although the form of his summaries could

support an inference that they were not delivered extemporaneously. ■■ The defendant argues that the effect of the prosecutor's technique was even more pernicious than that of a literal reading of the transcript because, while easily mistaken for such a reading, the "paraphrased" testimony misrepresented the actual testimony. However, the only noticeable inaccuracy occurred in the use of the word "kill" in place of "cut" and "hurt" when repeating the threats made by Hoggs as he held Miss Ward as a hostage. Although this exaggeration may have increased the severity of the threats in the minds of some jurors, it could have impaired the credibility of the prosecutor in the minds of others. Overall, it could not have seriously damaged the defendant's case since it was uncontroverted that threats of some sort were made, and to sustain a charge of aggravated assault it is only necessary to prove that the victim had a reasonable apprehension of receiving bodily harm from a person using a deadly weapon. Ill. Rev. Stat. 1969, ch. 38, pars. 12—1, 12—2(a) (1).

■■■ The more grievous error was the employment of the defendant's prior conviction for purposes other than impeaching his credibility. In their arguments both prosecutors linked attacks on the defendant's affirmative defense, that he lacked the capacity to commit burglary and aggravated assault because of being under the influence of drugs and alcohol, with references to his prior burglary conviction. The opening argument including the comment:

> "If I was caught in an apartment four months after I left the penitentiary, from burglary, I would be a little nervous, too. I would be perspiring also   *   *   *. Because who would want to go back to the penitentiary?"

In the final argument, the assistant State's Attorney first characterized the defense of incapacity as an appeal for sympathy. He then added:

> "Do you know, I don't doubt that we should feel sympathetic toward him. I wonder, how sympathetic? In February, he gets out of prison. In March, one month later, he is so upset about not finding a job that he is on acid."

Proof of a previous conviction is only admissible to discredit an accused's testimony and it is improper for the prosecution to refer to it for any other purpose. (*People v. Forbis* (1969), 109 Ill.App.2d 220, 248 N.E.2d 298.) The misuse of Hoggs' prior conviction might prompt us to reverse his conviction if the evidence of his guilt on the assault charge were not so conclusive. It is inconceivable that the jury could have returned a verdict of not guilty even if the prosecutors' arguments had been models of proper conduct. The jury was not easily influenced. It found Hoggs guilty of aggravated assault, but not guilty of burglary. It thus either

carefully discriminated between the offense of burglary which requires proof of a specific intent and the offense of aggravated assault which does not, or it refused to follow the prosecutor's suggestion that the indistinct object which the officer said Hoggs "appeared" to be carrying when he came to the window was Miss Ward's purse or another of her possessions. Hence, notwithstanding our disapproval of the prosecutors' remarks, we do not find them, under the circumstances of this case, to be of reversible dimension.

■■ The defendant's sentence, imposed on September 14, 1972, was proper under the statute then in force. (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(b).) However, the lesser penalties of the new Unified Code of Corrections apply to any criminal proceeding still on direct appeal when it took effect. (*People v. Chupich* (1973), 53 Ill.2d 572, 295 N.E.2d 1.) Aggravated assault is now classified as a Class A misdemeanor (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 12—2(b)) and the sentence for such a misdemeanor may be for any term less than one year. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—3(a) (1).) The defendant's sentence must be modified to conform with the provisions of the Code. The sentence is reduced to 364 days in the penitentiary and the cause is remanded with directions to issue forthwith an amended *mittimus* to this effect.

Affirmed as modified.

McNAMARA, P. J., and McGLOON, J., concur.