THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISIAH KITCHEN, Defendant-Appellant.

First District (3rd Division)   No. 76-522

Opinion filed September 14, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and Jeffrey C. Pattee, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:
Defendant, Isiah Kitchen, was convicted by a jury of the murder of Riley Parker and the attempt murder of Charles Morgan, and sentenced to not less than 15 nor more than 25 years for murder and not less than 4 nor more than 12 years for attempt murder, the sentences to run concurrently. His appeal raises three issues: whether (i) the trial court abused its discretion in denying defendant's motion *in limine* to preclude the State from introducing his two previous convictions for aggravated battery, (ii) improper statements by the prosecutor in his closing argument denied defendant a fair trial, and (iii) the prosecutor's effort to portray him as a violent person with a propensity for criminal conduct also denied him a fair trial.

Riley Parker was shot outside an apartment building where he was the janitor. Charles Morgan occupied an apartment in the building with Dolly Robertson. They were married after the shooting and prior to the trial. James Morgan is the brother of Charles. Loretta Adams, a co-defendant, lived in the building on the floor above Morgan and Robertson.[1] Robert Wilson was Adams' friend.

Charles Morgan and Robertson engaged in charges and countercharges with Adams, involving theft of property from their respective apartments. Charles Morgan and Parker filed a complaint with the police against Wilson, charging him with possession of property stolen from Morgan; Adams, in turn, complained to the police that her apartment had been burglarized. Later that evening, as Adams, carrying her infant son, and defendant were leaving the apartment building, they encountered the Morgan brothers and Parker on the stairway outside the Morgan apartment.

Defendant contended that as he and Adams descended the stairs below the Morgan apartment, the Morgans threw a radio at them, and defendant turned back towards the Morgans. Charles Morgan then fired one shot at defendant, missing him, and dropped the gun. Defendant picked it up, fired twice, threw the gun at the Morgans and ran out of the building.

---

[1] Adams was acquitted.

Immediately before the shooting took place, Adams and Parker ran down the stairs and out of the building.

According to the Morgans, as defendant and Adams were descending the stairs, they and Parker were leaving the Morgan apartment. The Morgans testified that defendant pulled out a pistol and fired three shots at them which hit no one. Charles Morgan told Robertson, his brother and Parker that defendant must have been firing a cap gun since no one was struck by bullets. He and his brother, according to their testimony, left the building with Parker, crossed the street and saw defendant standing with a gun behind a car in which Adams was sitting in the back seat. Charles Morgan testified that as Parker approached the defendant to talk with him, defendant fired several shots at Parker, and he saw Parker fall to the ground. At that point, the front door of the car flew open and the driver started shooting. Charles Morgan was wounded in the side and back.

Defendant claims that after he ran out of the building, he saw Parker coming toward him with a weapon in his hand, and Parker fired three or four shots in his direction. According to defendant, when Parker stopped shooting, defendant grabbed him and upon hearing more shooting, used Parker as a shield. Defendant testified that when the shooting stopped, he pushed Parker in the direction of the shooting, got into the car and was driven away by a friend, Chico, who had driven Adams and defendant to Adams' apartment. He testified that neither he nor Chico had a gun on the date of the shooting.

Adams testified that while in the back seat of the car she heard approximately four shots followed by a quiet interlude during which she looked out of the window and saw Parker grab defendant. She then heard a couple of additional shots, and the car pulled away. She also testified that she did not see defendant or Chico with a gun any time during the evening.

Defendant complains that by allowing his two prior convictions for aggravated battery into evidence, the trial court permitted the State to emphasize his propensity for violent conduct, instead of impeaching his credibility. The prior convictions satisfied the time requirements set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, with respect to both the period since release from confinement and the length of imprisonment. The only question for this court to decide is whether the trial judge abused his discretion in permitting the use of defendant's two prior convictions for aggravated battery.

Illinois courts have not hesitated to approve the use of multiple convictions where they involve dishonesty or false statements. (*People v. Dee* (1975), 26 Ill. App. 3d 691, 325 N.E.2d 336, and cases cited therein. See also *People v. Austin* (1976), 37 Ill. App. 3d 569, 346 N.E.2d 166.) Prior convictions for crimes other than for an offense based on dishonesty

or false statements have been held admissible on the theory that they establish a disposition on the part of the defendant to place the advancement of his individual self-interest ahead of the interest of society, and such proof may suggest a willingness to do so again on the witness stand. *People v. Nelson* (1975), 31 Ill. App. 3d 934, 938, 335 N.E.2d 79.

Multiple convictions for violent crimes of a different nature than the crime charged have been admitted even though they did not involve dishonesty. (*People v. Sanders* (1976), 37 Ill. App. 3d 236, 238, 345 N.E.2d 757 (two prior rape convictions admitted in trial for armed robbery).) Admission of multiple convictions has also been upheld in the case of violent crimes similar to the crime charged where dishonesty was not an element of the offenses. *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489; *People v. Blythe* (1974), 17 Ill. App. 3d 768, 308 N.E.2d 675.

■■ The prejudicial impact, if any, created by the introduction of the defendant's two prior convictions for aggravated battery is not any more harmful than in *Barksdale*, where two prior rape convictions were introduced in a trial for rape, deviate sexual assault and aggravated kidnapping. In *Blythe*, where previous convictions for manslaughter and assault with the intent to commit robbery with a dangerous weapon were admitted in a murder case, the court characterized the assault conviction as one for a crime of violence. The court stated in *Blythe*, "In our judgment, the two Tennessee convictions, being crimes of violence, do have a bearing directly upon the credibility of the defendant's contention that he killed in self-defense and the credibility of his evidence supporting that defense." (*Blythe*, at 771.) Kitchen's theory that he used Parker as a shield after Parker fired several shots at him is similarly subject to impeachment through the introduction of his two previous convictions for similar violent crimes. Admitting these convictions was not an abuse of discretion.

In regard to his two remaining contentions, although Kitchen was not afforded a perfect trial, a review of the record does not reveal conduct which was so prejudicial to Kitchen that it requires reversal. *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340.

■■ Defendant contends a series of comments made by the prosecutor during closing argument were inflammatory and prejudicial. In determining whether closing arguments are so prejudicial or inflammatory that a conviction must be reversed, the reviewing court must consider the arguments in their entirety. (*People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97.) Only when the remarks result in substantial prejudice to the defendant is reversal required. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed.

2d 296, 90 S. Ct. 1881.) Moreover, the record as a whole must be considered to determine if the prosecutorial comments were so prejudicial as to require a reversal. *People v. Burnett* (1963), 27 Ill. 2d 510, 190 N.E.2d 338.

Defendant claims that the errors in the State's closing argument fall into three categories: (i) those designed to show defendant's propensity to crime, (ii) those which distorted the evidence and referred to matters not in evidence, and (iii) those designed to imply that defense counsel colluded with defendant in producing perjured testimony.

Specifically, defendant alleges the following comments prejudiced him by showing that he had a propensity to crime:

> "State's Attorney: Mr. Kling [defense counsel] said how Ike didn't have to testify. It's the only way that you became aware of a very, very significant background of Ike Kitchen, and the two aggravated batteries—two shootings of other people.
>
> * * *
>
> You heard Ike Kitchen. You saw his demeanor on the stand. You heard about his aggravated battery convictions. He was out on parole four months when he killed Riley Parker.
>
> Talk about credibility, talk about a type of person you are going to believe?
>
> * * *
>
> And Ike says that man, after he shot at me, when he pulled that gun down and shot, he kind of flipped the gun down the stairs.
>
> That's real believable, Ike, it's real believable for a man who just got out of the penitentiary for committing the same type of offense, been on parole for four months.
>
> Defense Counsel: Objection.
>
> The Court: Sustained.
>
> * * *
>
> State's Attorney: I jotted these things down, which tend to show Ike Kitchen and Loretta Adams guilty of the murder * * * Ike's background. You look at his background and think about whether you are going to believe his testimony about being an innocent little person in the hallway.
>
> * * *
>
> You have a right not to have to live in the type of community where people like Ike Kitchen run around.
>
> Defense Counsel: I object to the impassioned plea of the State's Attorney.
>
> The Court: Overruled.
>
> State's Attorney: Run around and shoot people, and get out on parole, and four months later they are back in front of you—

Defense Counsel: Objection.

The Court: Sustained.

State's Attorney: —asking for sympathy.

The Court: Sustained."

Although the prosecutor's comments were not entirely proper, they do not require reversal. They did not reveal anything new to the jury, objections were sustained by the court, and the court instructed the jury concerning the limited use of prior convictions.

*People v. Stadtman* (1974), 59 Ill. 2d 229, 319 N.E.2d 813, and *People v. Hoggs* (1974), 17 Ill. App. 3d 67, 307 N.E.2d 800, on which defendant relies, do not support defendant's contention that he was prejudiced by these arguments. In *Hoggs*, the defendant's prior conviction was referred to in the closing argument to emphasize the defendant's nervous condition while testifying and his use of drugs after being released from prison. The way the prior conviction was used in *Hoggs* is notably different than the use of the prior convictions in this case; in the above-quoted portion of his closing argument, the prosecutor's references to whether defendant could be believed indicated he was attacking defendant's credibility. The *Stadtman* court's holding that testimony concerning defendant's prior use and possession of marijuana was reversible error because defendant previously had not been convicted of possession of marijuana is clearly distinguishable from the prosecutor's use of an actual prior conviction for impeachment purposes.

The next objection relates to the prosecutor's arguments, which defendant argues distort the evidence and refer to matters not in evidence. Among others, defendant objects to the following argument on the ground it states facts not in evidence and injects evidence of an unrelated crime into the proceeding:

"State's Attorney: Mr. Kling talks about how we didn't bring any evidence to link up Robert Wilson, also known as Robert Alexander, and a partner of some kind with Ike Kitchen.

Well, he knows as well as I do that you can't bring that type of evidence into court when a man is being tried for a separate offense.

Defense Counsel: Objection.

The Court: Sustained."

Although it is generally improper to include facts not proved by the evidence into the closing argument (*People v. Heywood* (1926), 321 Ill. 380, 152 N.E.2d 215), the remarks objected to were provoked by the defense counsel's comments in closing argument when defense counsel rhetorically asked, "Is there one shred of evidence that he [defendant] and Robert Wilson, the guy who was supposedly the burglar, were

partners? Not one shred of evidence * * * there is not one shred of evidence in which Isiah Kitchen is linked as a partner, friend or an associate, or anything else to Robert Wilson, other than seeing him on one or two occasions." The remarks were also provoked by the defendant's direct examination, in which he was asked whether he and Wilson were partners and how many times he had seen Wilson. *People v. Woodley* (1965), 57 Ill. App. 2d 380, 388, 206 N.E.2d 743.

Defendant relies on *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506; *People v. Cordes* (1945), 391 Ill. 47, 62 N.E.2d 465; and *People v. Brown* (1972), 3 Ill. App. 3d 1022, 279 N.E.2d 765, to support the proposition that when evidence is presented relating to a distinct substantive offense, reversible error is committed. All three cases, however, are distinguishable from this case, on the ground that the statement here was invited by the defendant's comment as well as on other grounds.

■■ The *Brown* court held that a prompt attempt to cure the error of the State's Attorney, who commented on defendant's commission of another crime unrelated to the one for which he was being tried, was insufficient since the comment already had informed the jury that the defendant had committed another crime. Here, the comments the prosecutor made about Robert Wilson were ambiguous, and did not necessarily implicate defendant in another offense; his statement can be construed to mean that Wilson was being charged for a separate offense. *Lehman* is not helpful to defendant because in that case the conviction was affirmed where the evidence of another crime had independent relevance and, therefore, was admissible. In *Cordes*, the court reversed the conviction because in discrediting the defendant's alibi, a witness also implicated defendant in a similar offense against that witness. In this case, however, there was no direct statement as to whether Kitchen actually committed or was charged with another crime or about the nature of the crime. The comment objected to was isolated, unclear, and in view of the prompt objection to it which was sustained, nonprejudicial.

Next, defendant contends that the prosecutor's conduct was improper when he argued: "Mr. Kling says why isn't Chico in here to tesify? He knows where he is; he is in Jackson, Mississippi." Defense counsel objected to the statement. Although the court sustained the objection, it need not have; under the circumstances of the case the prosecutor's comment was not error. Previously in the defendant's closing argument, counsel had stated: "And what about Albert Williams [Chico]? The State's Attorney doesn't bring in Albert Williams. They bring in some evidence to cloud the issue * * *. It's a smoke screen. It's an attempt to confuse the jury." Because defense counsel asked the question, it was in order for the

State to respond to it. *People v. Barber* (1930), 342 Ill. 185, 173 N.E. 798; *People v. Fleming* (1964), 54 Ill. App. 2d 457, 464, 203 N.E.2d 716; *People v. Griggs* (1977), 51 Ill. App. 3d 224, 366 N.E.2d 581.

Defendant also complains that, despite the court's sustaining defense objections to cross-examination of defendant regarding certain jail records, the prosecutor referred to these records in closing argument to impeach defendant's testimony that he was wounded during the shooting incident for which he was being tried, and to show that he received no emergency treatment for a wound. We again do not, under the circumstances of this case, find the comments in question prejudicial. During the defendant's closing argument, the defense counsel had argued that the State failed to impeach the defendant concerning his alleged leg wound. The defense stated: "Why didn't the State's Attorney bring officer anybody from the House of Corrections, or the jail to testify? 'Wait a second; we received him and there was no bullet wound on his leg.' " After this argument, we cannot view the prosecutor's response as prejudicial, particularly because the prompt objection was sustained. *Woodley.*

The remaining comments by the prosecutor during his closing argument which defendant claims were prejudicial and inflammatory, were in fact proper inferences from the evidence presented at trial. (*People v. Howe* (1940), 375 Ill. 130, 30 N.E.2d 733.) The first statement objected to is the prosecutor's comment that "Dolly Morgan gave a two-page written statement two hours after the shooting absolutely consistent with her testimony in court." Because her statement was used by defendant in an attempt to impeach Dolly Morgan, the prosecutor's argument that her testimony was consistent with her prior statement was proper.

The next objection is to the prosecutor's statement, "A lot of people compare that [the sound of a .25 caliber pistol] with a firecracker." This statement was an allowable inference from the testimony of witnesses that they believed the defendant was shooting at them with a cap gun.

Defendant's final objection regarding distortion of the evidence is to the prosecutor's statement, "The Morgan brothers could not have picked up a gun because when the police arrived, James and Charles Morgan were standing together and the officers did not find any guns." This statement is a proper inference from James Morgan's testimony that after his brother was shot, they ran down the street together, and from the fact the police officers who arrived at the scene immediately after the shooting found no guns at the scene of the shooting.

Defendant also attacks the conviction on the ground that the closing argument was prejudicial in implying that defense counsel conspired with

defendant to produce perjured testimony. Specifically, defendant objects to the prosecutor's comment, "It was only after Loretta Adams' testimony that Ike Kitchen decided he had to testify. After talking with Mr. Kling, he [defendant] tried to come up with a story to fit her testimony." This comment did not charge collusion between defendant and his counsel. Rather, the comment indicates that defendant felt he would have to testify after hearing Adams' testimony which recounted the incident differently than his counsel's opening remarks. This discrepancy is most clearly illustrated by contrasting counsel's remarks that only Charles Morgan fired the pistol inside the building with defendant's testimony that he also fired the pistol. The statement was not improper, since the brunt of the argument was not that defendant was coached by his attorney, but that Adams' testimony made it necessary for defendant to testify to correct any inconsistencies between her testimony and his attorney's opening statement.

Defendant's final series of objections involves the prosecutor's cross-examination of defendant. Defendant contends that the prosecutor purposely asked objectionable questions to portray defendant as a violent person with a propensity for criminal conduct. Specifically, he contends the following exchange was objectionable:

"State's Attorney: Mr. Kitchen, was October 8th, 1968 when you pled guilty to that aggravated battery charge, is that right?

Defendant: It was in October; I'm not sure of the date.

State's Attorney: You received three years probation and six months in Vandalia, is that right?

Defendant: Yes.

State's Attorney: And that was a plea of guilty to a reduced charge, is that correct?

Defense Counsel: Objection. May we have a side bar, please?

The Court: Sustained.

Defense Counsel: Thank you.

State's Attorney: The indictment in that case, Mr. Kitchen, what did that charge you with?

Defense Counsel: Objection.

The Court: Sustained."

Since defense counsel's objection was sustained, the questions never were answered. Unlike *People v. Hoffman* (1948), 399 Ill. 57, 77 N.E.2d 195, on which defendant relies, and where the objection was erroneously overruled, the jury never became aware of more serious charges against the defendant because the court properly stopped that line of questioning. Defendant's reliance on *People v. Mordican* (1976), 64 Ill. 2d 257, 356 N.E.2d 71, also is misplaced. There the State's Attorney

commented and elicited testimony about defendant's previous arrest for armed robbery, even though the State's Attorney knew that defendant had been acquitted of that crime. The case at bar also is distinguishable from *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351, N.E.2d 402, where the court found the conduct of the prosecutor reprehensible when he pursued a line of questioning after a defense objection had been sustained. In *Hovanec*, the prosecutor repeated the same basic question five times while trying to elicit information which the prosecutor had tried and failed to bring forth earlier in the trial. The *Hovanec* court concluded that the question was repeated five times to make it appear that the defendant was trying to hide something from the jury. In the case at bar, only two questions were asked and the line of questioning was not, as in *Hovanec*, pursued further later in the trial; the questions were improper, but harmless.

The next question claimed to be prejudicial asked if the defendant ever had been arrested with Robert Wilson. Although it usually is not permissible to bring out a defendant's prior arrests (*People v. Cook* (1976), 41 Ill. App. 3d 946, 952, 354 N.E.2d 122), here, no objection was made, and Kitchen answered in the negative. It is entirely possible that defense counsel felt, as a matter of strategy, that the answer might help his case by divorcing Kitchen from prior association with Wilson, a posture the defense was interested in advancing.

Later, defendant was asked, "Ike, you have been around shooting and gunshots and things like that before, haven't you?" An objection was sustained. Shortly thereafter the prosecutor propounded another question: "Ike, when you described what you were doing, stutter stepping, when the shots were fired at you, have you ever been shot at before, or shot before?" An objection to this question also was sustained. Defendant characterizes these questions as an effort to expand his criminal activity beyond his mere two convictions and claims the questions were intended to convince the jury that the defendant frequently was involved in shooting incidents or crime. Yet, the jury already knew that the defendant had been involved in previous shooting incidents, and the unanswered questions interjected no new evidence about the defendant. Defendant suggests that these questions create situations similar to those in *People v. Donaldson* (1956), 8 Ill. 2d 510, 134 N.E.2d 776, and *People v. Harges* (1967), 87 Ill. App. 2d 376, 231 N.E.2d 650. We do not agree. The court reversed Donaldson's conviction for murder because of an unsigned confession received in evidence showing he engaged in adulterous relations and suggesting that he had been in many robberies for which he was not convicted. *Donaldson*, however, is considerably different from the prosecutor's cross-examination of Kitchen, particularly because it was Kitchen himself who introduced the

term "stutter-step" in his direct examination, and also because the objection in this case was sustained. In *Harges,* among the numerous instances of improper conduct by the prosecutor was a series of questions during cross-examination in which the prosecutor asked defendant about the police station he was brought to after his arrest. The court held that such testimony had no bearing on the question of guilt, was otherwise irrelevant to any previous testimony of defendant on direct examination, and served no purpose other than highlighting that the defendant previously had been arrested and brought to the same police station. The court there also held that the error was not cured when the objection was sustained, because the suggestion conveyed by the question that the defendant previously had been arrested was too damaging. The objection in this case was not to a question seeking to establish Kitchen's prior arrest.

Moreover, in the case at bar, the defendant was contending he suffered a leg wound when Parker was killed, although he did not reveal that wound when he was arrested and placed in the county jail. The prosecutor may have been pursuing a line of inquiry to discover whether defendant could have received his leg wound in an earlier shooting incident. Under these circumstances, asking defendant if he had been around a shooting prior to the incident for which he was being tried was not prejudicial.

We do not view the cross-examination of defendant as improperly emphasizing his propensity for violent conduct, particularly because every objection to the questions complained of in this appeal was promptly sustained.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.