People of the State of Illinois, Plaintiff-Appellee, v.
Raymond M. Hardaway, Defendant-Appellant.

Gen. No. 11,076.

Fourth District.

May 8, 1969.

326

Glenn O. Fuller, Assistant Public Defender, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Garry E. Davis, Assistant State's Attorney, of counsel), for appellee.

MILLS, J., delivered the opinion of the court.

The defendant was indicted for the offense of armed violence, was tried before a jury, found guilty, and thereafter was sentenced to the penitentiary for a term of two years.

To reverse the judgment of conviction defendant contends (1) that the evidence is not sufficient to establish the defendant's guilt beyond a reasonable doubt and that the verdict is contrary to the manifest weight of the evidence, (2) that the state's attorney in his rebuttal closing argument committed error by commenting upon the failure of the defendant to call a certain witness, (3) that the penalty provisions prescribed for the offense of armed violence in this case are unconstitutional, and (4) that an unlawful penalty was imposed by the trial Court.

Complaining witness Beaman testified that while he was walking in downtown Decatur in the evening, the defendant, walking in the opposite direction, veered over toward him and began swearing in filthy language. The defendant then grabbed Beaman and threw him against an automobile, knocking him to the ground. When Beaman got up, defendant was standing over him with a gun in his hand and said "I'll kill you, you son-of-a-bitch." Beaman then testified that a group of people gathered around the sidewalk watching and the defendant turned and ran. Beaman immediately proceeded into an adjacent drugstore and called the police, giving a description of the defendant. Later, he was summoned to the police station where he identified the defendant as his assail-

ant. Beaman also made an unreserved identification of the defendant at the trial. A gun was produced at the trial, and Beaman testified that it was one like defendant had at the time of the assault, but admitted that he could not positively identify the exhibit as the one used during the crime.

Defendant's version of the contact with Beaman was that he accidently bumped into the complaining witness, excused himself, turned and continued on his way looking for some friends. He testified that Beaman turned around and said "black nigger, you still following me?" Defendant then stated he walked up to Beaman, pushed him, and that Beaman stumbled against an automobile but did not fall. He then left Beaman and had no further conversation or contact with him. Defendant denied having had any weapon, denied threatening Beaman, and stated that he had keys in his hand that Beaman might have mistaken for a weapon. Being unable to find his friends, defendant then returned to his automobile and drove his car around the block. Upon spotting his friends, he parked his car, walked one-half block to join his friends, conversed with them, started to walk back toward his car and was at that time arrested.

The arresting police officer testified that about fifteen minutes after the occurrence he saw the defendant standing across the street from his squad car. As the officer was backing up his car, defendant ducked down out of sight behind a car parked on defendant's side of the street. The police officer got out, and ran toward the defendant, who raised up and emerged between two parked cars, the one he had ducked behind and the one back of it. The police officer did not see what defendant was doing during the time he was out of his line of vision and heard no particular noise. Upon a search of the defendant and the defendant's car, nothing was found; a search of the sidewalk and area around the car that defendant had ducked behind also was unpro-

ductive. But after the defendant had been removed from the area, the police officer found the gun later introduced at trial under the rear axle of the automobile parked behind the car that defendant had ducked behind.

■■■■ The complaining witness's identification of the defendant was positive and completely unshaken on cross-examination. He identified defendant in the police station, he identified him in open court at the trial and testified that his in-court identification of defendant was based upon observation at the scene of the occurrence and not upon observation of the defendant at the police station. In fact, defendant admitted having personal contact with the complaining witness at the time and place of the alleged offense. Their stories differ only as to what took place. The question facing the jury was who told the truth, and the jury obviously believed the testimony of the complaining witness rather than that of defendant. This was the function of the trier of fact. "The testimony of even one witness, if positive and credible, is sufficient to convict in a criminal prosecution in this State, even though it is contradicted by the accused." People v. Novotny, 41 Ill2d 401, 411, 244 NE2d 182, 188; People v. Lacey, 24 Ill2d 607, 182 NE2d 730, 732; People v. Sproch, 409 Ill 55, 97 NE2d 833. And even where there is corroboration, and the evidence is conflicting, the question of the credibility of the witnesses and the weight of the evidence is for the jury. People v. Halteman, 10 Ill2d 74, 139 NE2d 286, 292; People v. Ulrich, 411 Ill 316, 104 NE2d 263, 266. As the Supreme Court said in People v. Williams, 40 Ill2d 522, 240 NE2d 645, 648: "Nor will this court reverse a judgment of conviction unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt." See also People v. Lobb, 17 Ill2d 287, 161 NE2d 325. We conclude that the evidence in the record is clearly sufficient to support conviction,

and in the absence of substantial prejudicial error we will not abjure the judgment of the jury to replace it with our own.

 Next, defendant contends that reversible error was committed by virtue of improper argument by the prosecutor. The state's attorney, in rebuttal closing argument, said, "Who else? Who helped put these pieces of jigsaw puzzle together—put them all together? The defendant even had difficulty remembering who he was to meet at Newman's. He had difficulty. She wasn't here in Court today. I didn't hear her testimony, I don't believe." Defense counsel immediately objected on the basis that this was improper rebuttal, for the reason that this point had not been first raised in the state's attorney's opening final argument. The prosecutor stated that this went to "credibility of witnesses," and the court sustained the objection. The record is clear that the prosecutor did not refer to the unproduced defense witness in his first closing argument, but we must also look at defense counsel's final argument. Defendant's attorney argued extensively that the jury was faced with deciding who was telling the truth, complaining witness Beaman or the defendant, and which version of the occurrence was most believable. It is well settled that where comments and arguments are invited by remarks of defense counsel, a defendant will not be allowed to claim prejudice by rejoinder. People v. Lewis, 25 Ill2d 442, 185 NE2d 254, 256; People v. Wheeler, 5 Ill2d 474, 126 NE2d 228, 234. Defendant testified that at the time of the occurrence he was searching for some friends, and upon cross-examination identified one to be Ernestine Greer who had moved to Cleveland. The other girls were named Ollie and Bert. None of these persons were called as witnesses. Alibi was not a defense, nor were these possible alibi witnesses. But their testimony would have gone to the question of credibility of the defendant's testimony. Defense counsel thus opened the door by his

330

arguments concerning which testimony the jury was to believe, and the prosecutor merely continued the general line of argument initiated by defense. In view of prior decisions on this point, the court considers it unnecessary to further burden this opinion. People v. Williams, 40 Ill2d 522, 240 NE2d 645, 649; People v. Lion, 10 Ill2d 208, 139 NE2d 757, 761; People v. Swift, 319 Ill 359, 365–366, 150 NE 263; People v. Sicks, 299 Ill 282, 286, 132 NE 573.

■■ We now turn to the contention that the penalty provisions for armed violence as applied to this case are unconstitutional. No cases are cited by the defendant as authority for this position, nor can we perceive a question of constitutionality. It is merely one of statutory construction. The armed violence provisions of the Illinois Criminal Code (Ill Rev Stats 1967, c 38, §§ 33A–1, 2, 3) were added to the code on August 3, 1967. No reviewing court to date has been called upon to consider the statutory language of these three sections of the code. As to the criteria for construction of penal statutes, it is axiomatic that they must be construed in favor of the accused with the object being the ascertainment of legislative intent. This is the final, proper and legitimate purpose of judicial construction. And although criminal statutes must be strictly construed, such construction cannot be utilized for the purpose of defeating the legislature's apparent and clear intent. People v. Kirkrand, 397 Ill 588, 74 NE2d 813, 815.

Section 33A–1, supra, defines "armed with a dangerous weapon" by specifically designating a variety of recognized weapons, including various types of guns, and "or any other deadly or dangerous weapon or instrument of like character." Section 33A–2, as is applicable to this appeal, defines the offense herein charged: "A person commits armed violence when, while armed with a dangerous weapon, he performs any act prohibited by Sections . . . 12–2, . . . of this Act." The penalties

Section, 33A–3, requires that a person convicted of armed violence "shall be imprisoned in the penitentiary for not less than 2 years and not more than the maximum provided for the same act while unarmed." The indictment herein charged the offense of armed violence by committing the offense of aggravated assault "while armed with a pistol, a dangerous weapon." Section 12–2 of the Criminal Code reads: "(a) A person commits an aggravated assault, when, in committing an assault, he: (1) Uses a deadly weapon; . . . (b) Penalty. A person convicted of aggravated assault shall be fined not less than $25 nor more than $1,000 or imprisoned in a penal institution other than the penitentiary not less than 4 days nor more than one year, or both."

 We think it obvious that the legislature intended by its 1967 creation of the offense of armed violence to counteract the much publicized increase in crime rate. Certain designated existing offenses were magnified into the more serious offense of armed violence when they were committed while armed. Such legislation was purely within the authority of the legislative branch, and no decisional authority has been presented by defendant to attack the presumption of constitutionality of such legislation. North Shore Post No. 21 of the American Legion v. Korzen, 38 Ill2d 231, 230 NE2d 833, 835.

Defendant further contends that "armed with a dangerous weapon" under armed violence is in direct conflict with "uses a deadly weapon" under the primary offense of aggravated assault, and that *using* a weapon is certainly more serious than merely being *armed* with a dangerous weapon. Assuming, arguendo, the correctness of this distinction, no authority has been cited to this court, nor are we aware of any, that casts doubt upon the constitutionality of the armed violence sections of the criminal code. Granted, the legislature may have intended the armed violence sections to apply only to felonies, and perhaps the inclusion of a misdemeanor was

an oversight, or an inadvertent inclusion, or an error in draftsmanship. Yet such inattention does not give birth to unconstitutionality. The armed violence provisions do not affect the necessity of proving the required elements of the original and primary offense of aggravated assault, which were alleged in the indictment and proved on trial.

■ Lastly, the sentence is challenged. And rightly so. The sentence of a flat two years in the penitentiary imposed by the trial court is erroneous since it exceeds the authorized maximum penalty pursuant to section 33A-3. The two years sentence to the penitentiary exceeded the reservation of the armed violence penalty section by being more than the maximum provided for the primary offense of aggravated assault, which is a misdemeanor and carries no more than a maximum of one year in a penal institution other than the penitentiary. It follows, therefore, that the sentence imposed of two years in the penitentiary is improper and erroneous, and must be vacated.

The conviction is affirmed, the sentence of the trial court is vacated and the cause is remanded to the trial court for imposition of sentence in accordance with this opinion.

Conviction affirmed and remanded with directions.

CRAVEN, P. J. and SMITH, J., concur.