THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MYRLE GOODRICH, Defendant-Appellant.

Fourth District   No. 13760

Opinion filed May 2, 1977.

Richard J. Wilson and Edward R. Green, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James A. Grohne, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendant Myrle Goodrich was indicted for the March 4, 1975, armed robbery of Ginger and Ellen Bunge. It was alleged that defendant entered Donnelly's Laundromat in Springfield and took money from Ginger and Ellen Bunge while armed with a knife. Prior to trial, defendant filed a written motion to suppress his confession. On August 15, 1976, the trial court held a hearing on this motion. Officer Damon Barley, a Sangamon County deputy sheriff, testified that he was on duty at approximately 12:30 a.m. on March 7, 1975, when he saw defendant for the first time at the county jail. Defendant was being booked on another armed robbery

and Barley noticed that defendant fit the description of the man who was involved in the armed robbery of Donnelly's Laundromat. Barley said he began questioning the defendant, became more convinced defendant was a prime suspect, and gave defendant his *Miranda* warnings, and defendant wrote out a written confession. Defendant then refused to sign it and told Barley to "Go get bent." Barley indicated that no other officers were present at the time and that no threats, promises or coercion were used to obtain defendant's confession. On re-cross, Barley indicated that the written confession was taken about noon on March 7, during daylight hours.

Defendant testified that he was arrested on March 6, 1976, in relation to another armed robbery in which a friend, William Withers, had been shot. He said that he and Withers were taken to the jail and Barley told him Withers would not be taken to the hospital unless defendant confessed to robbing some girls in the laundromat. Because of this threat, defendant wrote out a statement with Barley telling him what to write. Defendant said he was afraid Withers would die if he did not get medical attention. Also, defendant stated that he did not sign the confession because it was not truthful. Finally, defendant indicated that the confession was made in the early morning, just past midnight, on March 7, 1975.

After arguments of counsel, the court denied defendant's motion to suppress the confession.

On the following day while the court was hearing evidence pertaining to the suppression of a lineup identification, the State's Attorney brought to the court's attention that he had discovered new evidence bearing on the suppression of the confession issue. Specifically, the State's Attorney told the judge that an additional page of Barley's original report had just come to his attention and had just been supplied to defense counsel. The missing page indicated that about 12:15 a.m., March 7, 1975, Barley asked defendant if he wished to talk about a certain armed robbery Barley was handling. Defendant told Barley he did not wish to talk to him. This statement was prepared by Officer Barley and for the first time indicated to the court that defendant manifested a desire not to talk to Barley. Neither Barley's testimony the day before, nor defendant's, contended that the defendant first expressed a desire to remain silent and then later confessed.

At this point, defense counsel renewed his motion to suppress the written confession because, according to the missing page of Barley's report, the written confession was taken only five minutes after defendant exercised his right to remain silent. The court denied defendant's renewed motion, but at defense counsel's request, Officer Barley was recalled to testify.

This time Officer Barley changed his story and said that he had talked to

defendant on two occasions—12:15 a.m. and again the following afternoon at 12:20 p.m. Barley explained the inconsistency between his present testimony and that of the day before was due to confusion on his part. However, Barley said that he now distinctly remembered that defendant's written statement was taken in the daylight hours. Barley maintained that he had made a mistake in putting 12:20 a.m. on defendant's confession, that it was really 12:20 p.m. This mistake, he said, occurred since he ordinarily worked the night shift and consequently used "a.m." in his reports as a matter of habit. Barley cleared up his testimony by outlining that at approximately 12:15 a.m., "I just mentioned to him that I was handling an investigation of an armed robbery. I didn't say where, who, or anything of that nature. He said 'Forget it, go get bent. I don't want to talk to you.' I said okay." Barley then testified that the next day around noon he obtained defendant's written confession after having given him proper *Miranda* warnings. The court again denied defendant's motion to suppress, relying on Barley's testimony that he had not informed defendant at the first confrontation exactly which armed robbery he was seeking to talk about.

Defendant again took the stand and reiterated his previous testimony. His testimony conflicted with Officer Barley's in that defendant maintained that Barley questioned him specifically about the laundromat robbery in the first questioning. Defendant could not remember if Barley had read him *Miranda* warnings but was sure that he gave the written statement near midnight, not near noon the next day.

At trial, defendant's written confession was introduced into evidence and read to the jury over defendant's objection. Besides Officer Barley's testimony and defendant's written confession, the prosecution introduced a photo as a lineup identification made by Ginger and Ellen Bunge. Ginger Bunge also made a courtroom identification of defendant as the man who robbed her and her sister at knifepoint at Donnelly's Laundromat. Defendant presented no evidence.

The jury found defendant guilty of armed robbery and he was sentenced to serve 6 to 18 years in prison.

The sole issue for review is whether the trial court erred in refusing to suppress defendant's confession which was admittedly taken after defendant had initially expressed the desire to remain silent. Naturally, the time when the confession was taken is of critical importance. Initially, the record did not disclose a factual finding by the trial court judge as to when he believed the confession was taken. Since Officer Barley's testimony changed at the second day's hearing, and since defendant's motion to suppress was denied each time, it became necessary for us to determine whether the court believed Barley's final explanation of when the confession was taken. On March 15, 1977, we entered an order

remanding to the trial court with directions to make findings of fact and conclusions of law upon which the decision denying the motion was based. On April 5, 1977, these findings were filed with our court.

The findings indicate that the court believed Officer Barley's explanation of the mistake in the time on the written confession. The judge believed Barley's testimony that the confession was taken around 12:20 p.m. on March 7, 1975, after the officer gave defendant renewed *Miranda* warnings. The court found that defendant had read and understood those warnings and had voluntarily waived his rights. Also, the judge found defendant's testimony concerning threats and as to the time not worthy of belief.

■■ Central to the entire case is the problem of credibility. The defendant's testimony directly conflicts with that of Officer Barley and naturally the trial judge was in the best position to best assess these witnesses and decide whose version represented the truth. (*People v. Bunting* (1974), 18 Ill. App. 3d 99, 309 N.E.2d 316.) The question of competency and voluntary nature of a confession is for the trial court and will not be disturbed unless against the manifest weight of the evidence or clearly an abuse of discretion. (*People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97.) Under these standards we find that the trial judge was perfectly free to believe the officer's testimony and disbelieve that of the defendant.

■■ In our opinion, defendant's confession was not rendered inadmissible under the prophylactic standards set out in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321. Those standards were not changed for purposes of this case by *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711, the latest Supreme Court pronouncement in this area. *Mathiason* was decided on the basis that the defendant was not "in custody" at the time he confessed. In the present case, Goodrich was clearly "in custody" both times he was questioned by Officer Barley. The interrogations took place at the police station and he was not free to leave.

In *Mosley*, defendant was arrested in connection with three robberies. He was brought to the station and read his *Miranda* rights. An officer began questioning the defendant about two of the robberies and when defendant invoked his right of silence, interrogation stopped. Two hours later, another officer questioned defendant about a recent robbery-murder and deceived defendant into making an inculpatory statement about the murder. The trial court allowed the statement to be admitted and defendant was convicted of murder. The Supreme Court affirmed, emphasizing that inculpatory admissions obtained during requestioning of a person who has exercised his right to remain silent would be

admissible only if the People could show that the right to cut off questioning was scrupulously honored. 423 U.S. 96, 103-04, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313, 321 see Comment, *Michigan v. Mosley: A Further Erosion of Miranda?* 13 San Diego L. Rev. 861 (1976).

In *Mosley*, the court emphasized three circumstances which tended to show that defendant's right of silence was scrupulously honored: (1) passage of significant time between questioning, (2) a different officer conducted the second questioning and gave new *Miranda* warnings, and (3) the fact that the second questioning involved a completely different crime.

Here there was over a 12-hour passage of time between questionings— much greater than in *Mosley*. Although the same officer conducted both sessions, Barley testified that at the first encounter he did not even tell defendant which armed robbery he wanted to talk about. This is somewhat analogous to the *Mosley* situation involving two different crimes. In addition, the court stressed in the present case that defendant had said to Barley at their first meeting, "No, I don't want to talk to you right now," which could be interpreted as an invitation to talk later. Certainly, that statement, if so interpreted, would tend to show that defendant's right of silence was scrupulously honored. Barley testified that he immediately ceased questioning when defendant told him to "Go get bent," came back 12 hours later and after repeating the *Miranda* warnings, proceeded to take defendant's written confession. We believe that these facts show that under the *Mosley* standards defendant's right of silence was scrupulously honored by the police.

For the foregoing reasons we hold that the trial court's finding that defendant's confession was voluntary and competent was not against the manifest weight of the evidence nor inadmissible under Federal exclusionary standards as explained in *Mosley*. The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

REARDON and MILLS, JJ., concur.