THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY PEREZ, Defendant-Appellant.

First District (1st Division)   No. 81—374

Opinion filed March 7, 1983.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Denise O'Malley Porn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Defendant Anthony Perez was found guilty of murder following a jury trial, and sentenced to a term of natural life. Defendant appeals, arguing: (1) his rights to remain silent and to counsel were not scrupulously honored; (2) the trial court erroneously restricted cross-examination of a key State witness and therefore the jury could not fairly assess the weight to be given defendant's admission; (3) he was deprived a fair trial by the manner in which the prosecution presented defendant's confession to the jury; (4) the trial court erroneously admitted into evidence a police investigator's testimony regarding powder burns on the victim's wounds, thereby prejudicing defendant; (5) he was denied a fair trial due to the prosecutor's improper remarks; (6) he was denied due process when he was sentenced to a term of natural life because the trial judge told him, prior to trial, that the maximum sentence he could receive if he pleaded not guilty, was 80 years; (7) the case must be remanded for a new sentencing hearing because defense counsel was not afforded the presentence report in the requisite period of time; (8) the trial court abused its discretion by sentencing defendant to natural life because the evidence failed to prove that defendant participated in the mutilation of the deceased; and (9) the discretion vested in the trial judge to sentence a defendant to a natural life term violates the equal protection clause.

We affirm.

The frozen body of Victor Figueroa was discovered on February 23, 1979, by police officer James Tagliere in the gangway at 1027 N. Francisco Street, in Chicago. The victim had been shot. His penis had been amputated and had been forced into the victim's mouth. Six .38-caliber cartridge cases were found on the windowsill above the victim. A gold chain with a Playboy bunny charm was found next to the body. The chief medical examiner of Cook County testified that an autopsy confirmed three bullet wounds to the chest and the amputation of the penis. The cause of death was a bullet wound to the heart.

In August 1976, Figueroa had been a witness for the State in the murder trial of Julio Munoz, Sr., who was convicted and sentenced to 75 to 150 years. Figueroa had received so many threats on his life

from members of the Latin Kings street gang that he was relocated for protection.

Police Officer Jeremiah Lynch was assigned to investigate Figueroa's murder. After several days, information was obtained which led to the arrest of defendant. After his arrest, defendant was given his *Miranda* warnings on six occasions during the transportation and interrogation. The circumstances surrounding defendant's waiver of his rights will be discussed below.

While in custody, defendant initially denied any involvement in Figueroa's murder. However, after making a phone call, he told Officer Lynch that he and another individual, known only as "Black Jack," had decided to kill Figueroa because he had testified against the father of one of the Latin Kings. Defendant's confession was read to him and he signed it. Defendant's motion to suppress his oral and written statements was denied at trial. The trial judge allowed the State to read defendant's statement to the jury and it was admitted into evidence. The written statement was also given to the jury.

Prior to the pretrial conference, the trial judge informed defendant that the maximum sentence which could be imposed for the crime of murder was 80 years. A plea bargaining session resulted in the State offering defendant 50 years in exchange for a guilty plea. Defendant rejected the State's offer and decided to exercise his constitutional right to proceed to trial. After trial, defendant was found guilty and sentenced to a term of natural life.

First, defendant contends that his rights to remain silent and to have counsel present were not scrupulously honored. We disagree.

Defendant received the first set of *Miranda* warnings from Officer Sherry, while being transported from the scene of the arrest to headquarters. Later, defendant received *Miranda* warnings from assistant State's Attorney Kopec. When defendant responded, "I don't want to talk to you right now. I want to make a phone call," Kopec immediately stopped his questioning and left the room. Defendant then told Lynch that he would be willing to tell the officers what happened after he made the phone call.

After making the phone call, once again defendant was informed of his rights, stated that he understood them and proceeded to disclose, in detail, how he murdered Figueroa. Kopec asked defendant if he would repeat his confession in the presence of a court reporter. Defendant agreed. A court reporter was called and recorded defendant's confession. Defendant then gave Kopec a statement which was substantially the same as the statement he had previously given to Lynch. Defendant stated that, "I shot Playboy, but I didn't cut off his

dick." Further, the statement revealed that defendant had been in a bar at 1100 North California when the victim came into the tavern hoping to buy drugs. He and Black Jack lured the victim to a gangway a short distance from the bar. Black Jack pretended to fall on the ice, dragging the victim down with him. Defendant then told the victim that his days were over and fired six rounds from a .38 revolver at the victim. Black Jack reloaded the weapon for defendant and told defendant to fire the seventh bullet into the victim's heart, which he did. The pair then fled the scene.

Kopec then read the statement to defendant and defendant signed it. During trial, the statement was read to the jury by two assistant State's Attorneys.

The *Miranda* decision established that a defendant may waive his rights to remain silent and to have an attorney present, provided the waiver is made voluntarily, knowingly and intelligently. Interrogations must cease when the accused indicates that he wishes to remain silent. Likewise, if he indicates that he wishes to consult with an attorney before speaking there can be no further questioning. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) However, subsequent decisions hold that admissibility of statements obtained after the accused asserts his right to remain silent depend upon whether his right to cut off questioning was scrupulously honored. (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) It is equally clear that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) Furthermore, the United States Supreme Court has emphasized three circumstances which tended to show that defendant's right of silence was scrupulously honored: (1) the passage of significant time between questioning, (2) a different officer conducted the second questioning and gave new *Miranda* warnings, and (3) the fact that the second questioning involved a completely different crime. (*Michigan v. Mosley* (1975), 423 U.S. 96, 106, 46 L. Ed. 2d 313, 322-23, 96 S. Ct. 321, 327-28.) This court has held that the fact to determine the voluntariness of a statement is whether it was made without compulsion or inducement. *People v. Savory* (1980), 82 Ill. App. 3d 767, 403 N.E.2d 118.

It is our opinion that defendant's rights were scrupulously honored. He was given *Miranda* warnings on six separate occasions

by "different authority," Officer Lynch and assistant State's Attorney Kopec, as required by *Mosley*. Moreover, here as in *People v. Goodrich* (1977), 48 Ill. App. 3d 141, 362 N.E.2d 798, defendant's initial statement to Kopec indicated that he did not wish to discuss the crime until after he had made a phone call. Under *Goodrich*, this must be considered an "invitation to talk later," after the phone call. If so interpreted, this fact further establishes that defendant's rights were scrupulously honored. *Goodrich*.

■ Second, defendant contends that the jury was not able to determine fairly the weight to be given defendant's confession because he was not allowed to cross-examine Investigator Lynch about his initial denial of involvement in the crime.

At trial, defense counsel attempted to question Lynch about defendant's denial of his involvement in the homicide. The State objected on several grounds. The trial judge sustained the objection.

The Illinois Supreme Court has held that the trial court is vested with substantial discretion as to the range of cross-examination. (*People v. McCain* (1963), 29 Ill. 2d 132, 193 N.E.2d 784.) A reviewing court will not interfere absent a clear showing of abuse of such discretion, resulting in manifest prejudice to the defendant. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.

There was extensive direct and cross-examination concerning the circumstances surrounding the defendant's confession. The testimony of Officer Lynch, who was present during defendant's interrogation, established that defendant initially denied that he had murdered Figueroa. Given these facts, the jury was provided with sufficient information from which to decide what weight defendant's admission should be given. Furthermore, in light of the overwhelming evidence of defendant's guilt, any errors due to the limitation on the defense counsel's cross-examination of Lynch was harmless error.

■ Third, defendant contends that he was denied a fair trial due to the manner in which defendant's confession was read to the jury. The trial judge permitted assistant State's Attorney Kopec to read the questions and rights he gave defendant in the presence of the court reporter. Another prosecutor read defendant's responses. Defendant argues the procedure overemphasized the statement to his prejudice. We agree that the method used to present defendant's confession to the jury was improper, and we would caution the State against using this method in introducing a written statement. However, we find that the procedure used did not overemphasize the statement to defendant's prejudice. We find this error, if any, to be harmless.

■ Fourth, defendant contends that he was denied a fair trial by the prosecutor's repeated improper remarks made during closing argument. The first comments which defendant identifies as improper were made by the prosecutor in direct rebuttal to defense counsel's accusation that the State failed to produce certain witnesses. Where comments and arguments are invited by remarks of defense counsel, defendant will not be allowed to claim prejudice. (*People v. Hardaway* (1969), 108 Ill. App. 2d 325, 247 N.E.2d 626.) Moreover, any prejudice to defendant was cured when the judge admonished the jury to disregard the comments. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

Defendant also assigns error to the fact that the trial judge failed to sustain defendant's objection regarding the prosecutor's characterization of defense counsel's attempts to implicate a third party as a "puff of smoke." Again, the prosecutor's remarks were provoked by defense counsel's query as to whether the prosecutor excluded the reasonable hypothesis that another gang member killed Figueroa. (*Hardaway.*) And any prejudice resulting from the prosecutor's references to defendant as a "hit man," a "butcher" and a "pusher" were cured when defense counsel's objections were promptly sustained. *People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.

Additionally, defendant contends that various other remarks, similar to the ones above, were clearly prejudicial. He argues that their prejudicial effect mandates that defendant's conviction be reversed. We disagree.

The trial court is given wide latitude in determining the propriety of the closing argument. A reviewing court will not disturb the trial court's determination absent a clear abuse of discretion based upon the record as a whole and the arguments in their entirety. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931.) After thoroughly reviewing the record we find any error which may have been committed would not warrant a reversal. *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.

■ Fifth, defendant contends that he was denied his due process right to knowingly and intelligently exercise his right to trial. He urges that his sentence must be reduced from natural life to 80 years because he was informed by the trial judge, prior to plea negotiations, that the maximum sentence he could receive would be 80 years.

The record shows that before the plea bargaining conference, the trial judge admonished defendant that,

"[u]nder certain circumstances, for instance if you have a his-

tory of prior delinquency of criminal activity, or if an extended term is necessary to determine—deter others from committing the same crime, or the crime is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, the maximum number of years that the court could assess under·an extended term would become eighty years."

Defendant was subsequently offered a 50-year term in exchange for a guilty plea, but declined the offer. Following trial and arguments on sentencing, the trial judge stated that because the victim was savagely mutilated, he must "sentence this defendant to the greatest possible penalty under the law; and that is confinement for the rest of his natural life."

The State argues that defendant has waived this issue since it was not specifically set forth in his motion for a new trial. However, Supreme Court Rule 615 (87 Ill. 2d R. 615) provides that plain errors affecting substantial rights may be addressed although they were not brought to the trial court's attention. The exercise is discretionary by the reviewing court. (*People v. Benniefield* (1980), 88 Ill. App. 3d 150, 410 N.E.2d 455.) In the interest of justice and fairness we choose to address the issue.

The United States Supreme Court has recognized that plea bargaining is an essential component of the administration of justice. (*Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495.) *Brodenkircher v. Hayes* (1978), 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663, stands for the proposition that defendants who make knowingly, voluntary and intelligent choices to risk increased sanctions rather than plead guilty pursuant to a plea bargain will be held to that choice. In so holding, *Bordenkircher* and subsequent cases, address situations wherein a plea bargaining session resulted in defendant pleading guilty.

Illinois Supreme Court Rule 402(a)(2) (87 Ill. 2d R. 402(a)(2)), as interpreted by this court, also provides that the possible penalties must be known to the defendant, on the record, at the time of his *plea of guilty.* (Emphasis added.) (*People v. Lundeen* (1977), 55 Ill. App. 3d 799, 371 N.E.2d 329.) Rule 402(a)(2) does not address any other situation wherein the judge is required to inform defendant of potential sentences. In the instant case, defendant chose not to accept the State's offer. He was afforded the constitutional safeguards inherent in exercising his sixth amendment rights. Moreover, we find nothing in our research to indicate that the trial judge is obligated to inform defendant of the possible sentences defendant may receive for a crime unless that defendant has chosen to plead guilty. Furthermore,

defendant was represented by competent counsel at the plea bargaining conference and throughout the trial. Therefore, we find that defendant's sentence to a term of natural life must stand.

Finally, defendant contends that the totally unbridled discretion, vested in the trial judge, to sentence a defendant to a term of natural life rather than an extended term violates the equal protection clause guaranty of equality of punishment. Because defendant's contention was not raised at either the sentencing hearing or in his motion for a new trial, the issue is waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Assuming there had been no waiver, we find no merit in defendant's contention. The identical issue was recently considered by the Appellate Court, First District, in *People v. Cartalino* (1982), 111 Ill. App. 3d 578. The court found that the merits of defendant's contention are unsupportable. We agree with the *Cartalino* holding. Further, we find that defendant's remaining contentions are without merit.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.