2026 IL App (1st) 231771-U

No. 1-23-1771

Order filed June 2, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 79 CR 1730 |
| | ) | |
| ANTHONY PEREZ, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's dismissal of defendant's successive postconviction petition because (1) as an adult offender, defendant cannot raise an eighth amendment challenge to his life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012); (2) defendant cannot demonstrate the cause prong of the cause and prejudice test with respect to his claim under the proportionate penalties clause of the Illinois Constitution; and (3) postconviction counsel did not render unreasonable assistance.

¶ 2     Defendant Anthony Perez appeals the second-stage dismissal of his successive petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).

Defendant was 18 years old when he committed first-degree murder. The trial court sentenced him to natural life imprisonment. On appeal, defendant contends (1) the circuit court erred in dismissing his sentencing challenge under the eighth amendment to the United States Constitution (U.S. Const., amend VIII), *Miller v. Alabama*, 567 U.S. 460 (2012), and related authority; (2) he demonstrated cause and prejudice with respect to his claim under proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); and (3) postconviction counsel rendered unreasonable assistance. For the following reasons, we affirm.[1]

¶ 3                                                    I. BACKGROUND

¶ 4                                                    A. Jury Trial

¶ 5        The State charged defendant with first degree murder (Ill. Rev. Stat. 1977, ch. 38, ¶¶ 9-1(a)(1), 9-1(a)(2)) arising out of the fatal shooting of Victor Figueroa in Chicago on February 21, 1979. In January 1981, the case proceeded to a jury trial. The evidence established that police found Figueroa's body in a gangway on February 23, 1979. He had been shot three times in the chest, and his penis had been cut off and forced into his mouth. Police arrested defendant, who confessed that he and an accomplice murdered Figueroa in retaliation for testifying against a member of the Latin Kings in a 1976 criminal case. Defendant admitted shooting Figueroa but denied that he mutilated Figueroa's body. The jury found defendant guilty of first degree murder. According to the Illinois Department of Corrections website, defendant's date of birth is November 29, 1960, meaning that he was 18 years old when he murdered Figueroa. See *People v. Goods*,

---

[1]The parties completed briefing of this appeal in May 2025. However, the original authoring justice's illness delayed the resolution of this appeal. To accelerate resolution of this matter, the court recently reassigned the case to this panel.

2016 IL App (1st) 140511, ¶ 56 ("A court may take judicial notice of information that the Illinois Department of Corrections provides on its website.").

¶ 6                                    B. Sentencing

¶ 7     The case proceeded to a sentencing hearing on February 10, 1981. The trial court stated that it had reviewed the presentence investigation report (PSI), which is included in the record on appeal. The PSI stated that defendant's mother abandoned him in 1968 and thereafter, he moved "from place to place," including a home in Tennessee where he suffered physical abuse. Defendant had a "history of truancy, runaway, and delinquency dating back to 1970," including "18 station adjustments and eight juvenile court referrals." Defendant returned to Illinois in the early 1970s and became a ward of the Department of Children and Family Services (DCFS) in 1973. He attended less than one semester of high school. The PSI also stated that, according to childhood psychological records, defendant was "borderline mental defective." His intelligence quotient (IQ) was 69. Defendant suffered from "classic oedipal struggle" involving "competition with male members as head of family." Defendant claimed "he was in a mental hospital for six months in 1973 but d[id] not remember which hospital it was." Defendant began abusing drugs and alcohol at age 13. The trial court also reviewed defendant's juvenile records, which are in the record on appeal. Between 1973 and 1977, the State filed at least eight petitions alleging that defendant committed juvenile offenses including sexual assault, aggravated battery, aggravated assault, unlawful use of a weapon, battery, robbery, theft, resisting a peace officer, and criminal damage to property.

¶ 8     Defendant requested a continuance to subpoena DCFS records that may have included records of psychiatric treatment at Ridgeway Hospital and medical professionals' opinions

regarding defendant's "troubled" childhood development. The court denied defendant's request, finding that it had "sufficient information to work on."

¶ 9    In aggravation, the State argued there was no dispute defendant murdered Figueroa in retaliation for testifying against other members of the Latin Kings. The State highlighted the mutilation of Figueroa's body and characterized this murder as "one of the worst crimes imaginable." The State requested that the court sentence defendant "severely and harshly."

¶ 10    In mitigation, trial counsel focused on defendant's childhood, arguing that the PSI and juvenile records told "a sad story" of a "borderline mental defective" young man who "was thrown into a cauldron" of poverty, drugs, and violence. Counsel argued that "some of the blame *** for this particular crime should be shared by" DCFS and defendant's mother due to their lack of care for defendant as a child. Counsel requested a sentence "that would give [defendant] a chance to be released, so that when rehabilitation does occur, he will have a chance to, in fact, become a productive member of society."

¶ 11    In allocution, defendant stated:

"So far, you people think it was me—think of me as nothing, just because I have been brung up in the neighborhood. You don't know what I live in. You don't know what we go through. I don't know. You call yourself people of justice. Ain't no justice here. It is Puerto Rican's crime; not a white man's flap. It is a Puerto Rican's crime; white man's flap.

You say I killed somebody, somebody supposed to have been a friend of mine. You blame me for killing him. You put the mark on my back as a murderer, man."

¶ 12    The court sentenced defendant to natural life in prison. The court explained that even if DCFS was "totally negligent in taking care of [defendant]" as a child, that "would not absolve him of his crime," which the court described as "repulsive." The court highlighted that defendant committed "society's most serious crime" and that Figueroa was "savagely mutilated." The court found that Figueroa's murder and mutilation qualified as "acts that [we]re heinous and indicative of guilt," thereby warranting a life sentence.

¶ 13                          C. Direct Appeal

¶ 14    On direct appeal, defendant raised nine claims of error, four of which challenged his life sentence. *People v. Perez*, 113 Ill. App. 3d 143, 145 (1983). Defendant argued that (1) the trial court imposed a life sentence despite indicating prior to trial that the maximum sentence would be 80 years; (2) trial counsel did not timely receive the PSI; (3) the trial court abused its discretion in imposing a life sentence because the evidence did not prove that defendant mutilated Figueroa; and (4) the trial court's ability to sentence defendant to life was unconstitutional. *Id.* at 145. This court affirmed defendant's conviction and sentence. *Id.* at 149-51.

¶ 15                    D. Initial Postconviction Petition

¶ 16    On October 20, 2000, defendant filed a *pro se* postconviction petition challenging his sentence pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court summarily dismissed the petition and this court affirmed. *People v. Perez*, No. 1-00-4224 (2002) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17                  E. Successive Postconviction Petition

¶ 18    On October 3, 2019, defendant filed a *pro se* motion for leave to file a successive postconviction petition.

¶ 19    Defendant's successive petition first raised a "facial" challenge to life sentences imposed on young adults generally. Defendant argued that "scientific studies establish that young adults under the age of 21 have an underdeveloped sense of responsibility and engage in impetuous and ill-considered decision making"; therefore, federal and state courts had reached a "consensus" that courts should not impose life sentences upon offenders under age 21. Defendant attached (1) a 2009 Stanford Technology Law Review article regarding the use of brain imaging studies in court; (2) the United Nations' 1948 Universal Declaration of Human Rights; and (3) articles from the mid-2010s describing how developing neuroscience affected criminal cases involving young adult defendants. In addition, defendant submitted the opinion of psychologist Dr. James Garbarino, which argued that *Miller* protections should extend to defendants between ages 18 and 25. Dr. Garbarino's cover letter to defendant stated that he "look[ed] forward to helping on [defendant's] case," but Dr. Garbarino's opinion was not specific to defendant.

¶ 20    Defendant's successive petition also argued that his natural life sentence violated the eighth amendment under *Miller* and the proportionate penalties clause "as applied" to him. Defendant contended that he was 18 years old when he murdered Figueroa, yet the trial court imposed a life sentence without considering defendant's youthful characteristics or his potential for rehabilitation. Defendant highlighted his difficult childhood as reflected in the PSI and the juvenile records the trial court reviewed prior to sentencing.

¶ 21    Defendant sought leave to file his successive petition under the cause and prejudice test, which requires a petitioner to show (1) a reason he could not have raised his claim earlier and (2) a violation of his right to due process. See 725 ILCS 5/122-1(f) (West 2018). As to cause, defendant argued that *Miller*, related case law, and the scientific research that informed those cases

did not exist at the time of his sentencing, direct appeal, or initial postconviction petition. As to prejudice, defendant contended that he was harmed by serving an unconstitutional life sentence.

¶ 22    The circuit court advanced defendant's petition to the second stage and appointed the Office of the Public Defender to represent him. Postconviction counsel did not amend defendant's *pro se* petition. Rather, he filed a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017), attesting that he had consulted with defendant, reviewed the record, investigated potential witnesses, researched potential legal arguments, and found no need to amend the successive petition.

¶ 23    The State moved to dismiss defendant's successive petition. The State argued that defendant could not raise an eighth amendment *Miller* claim because he was an adult when he murdered Figueroa, and only juvenile offenders may raise eighth amendment *Miller* claims. In addition, the State argued that developments in case law stemming from *Miller* did not provide cause for defendant to raise his proportionate penalties clause claim in a successive petition, citing *People v. Dorsey*, 2021 IL 123010, ¶ 73 ("*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause."). Finally, the State argued that defendant did not comply with the Act's pleading requirements because he did not (1) verify his petition by affidavit or (2) submit evidence that his sentence specifically was unconstitutional; rather, he relied on articles claiming that young adult offenders in general are similar to juvenile offenders. Postconviction counsel did not file a response to the State's motion to dismiss. However, he filed defendant's handwritten affidavit, which narrated his difficult childhood. The court advanced defendant's proportionate

penalties clause claim to the third stage, explaining that defendant should have "an opportunity to subpoena the DCFS records so a complete record can be made."

¶ 24 On June 26, 2023, the State filed a motion to reconsider based on *People v. Moore*, 2023 IL 126461, which our supreme court decided on May 18, 2023. In *Moore*, the supreme court held that because *Miller* did not change the law applicable to discretionary life sentences imposed on young adult defendants, it does not provide cause for filing a successive postconviction petition challenging such a sentence under the eighth amendment or the proportionate penalties clause. *Id.* ¶¶ 38-42. The State argued that, pursuant to *Moore*, defendant could not establish the cause prong of the cause and prejudice test with respect to his proportionate penalties clause claim. Postconviction counsel did not file a response.

¶ 25 The court granted the State's motion to reconsider and dismissed defendant's proportionate penalties clause claim pursuant to *Moore*.

¶ 26 Defendant timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28 Defendant contends the circuit court erred in dismissing his successive postconviction petition because (1) the State never sought dismissal of his eighth amendment *Miller* claim based on his failure to demonstrate cause and (2) he demonstrated cause to raise his proportionate penalties claim based on new scientific studies regarding young adult brain development. In the alternative, defendant contends that appointed postconviction counsel rendered unreasonable assistance.

¶ 29                          A. The Post-Conviction Hearing Act

¶ 30    The Act allows a defendant to raise a claim that his sentence violates his constitutional rights. *People v. Clark*, 2023 IL 127273, ¶ 38. Generally, a defendant may file only one postconviction petition. *Id.* ¶ 39. To obtain leave to file a successive postconviction petition, a defendant must fulfill the cause and prejudice test set out in section 122-1(f):

> "Leave of court [for filing a successive postconviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

The court conducts the cause and prejudice analysis based on the pleadings and determines whether the defendant has alleged facts setting out a *prima facie* case of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 47. A defendant must establish both elements to obtain leave to file a successive postconviction petition. *Id.*

¶ 31    If a court grants leave to file a successive postconviction petition, the petition advances to the second stage. *People v. Robinson*, 2020 IL 123849, ¶ 43. At the second stage, the defendant may request counsel, and the State may file responsive pleadings. 725 ILCS 5/122-4, 122-5 (West 2018). The court must determine whether the petition makes a substantial showing of a constitutional violation. *People v. Sanders*, 2016 IL 118123, ¶ 37. If the petition does not make

such a showing, the court must dismiss it. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the petition makes such a showing, it advances to the third stage for an evidentiary hearing. *Id.* ¶¶ 28-29.

¶ 32 Defendant's successive petition alleges that his life sentence violates both the eighth amendment and the proportionate penalties clause because he was 18 years old when he murdered Figueroa, yet the trial court did not consider his youth or potential for rehabilitation before imposing a life sentence. *Miller* and related cases hold that a life sentence imposed on a juvenile offender violates the eighth amendment unless the sentencing court considers in mitigation his youth, immaturity, and potential for rehabilitation. *Miller*, 567 U.S. at 471-80; *People v. Buffer*, 2019 IL 122327, ¶¶ 25-27. A defendant who was 18 or older at the time of the offense, like defendant in this case, is not a juvenile and cannot raise an eighth amendment *Miller* claim. See *People v. Harris*, 2018 IL 121932, ¶¶ 58-61. However, any defendant, including a defendant who was between 18 and 21 at the time of the offense, can challenge his sentence under the proportionate penalties clause. *Id.* ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44.

¶ 33 Defendant's successive petition focuses on his age, but it also mentions "intellectual disabilities" and "mental deficiency." We presume this refers to defendant's IQ of 69 and childhood psychiatric issues. Our supreme court has rejected equating youth with intellectual disability because the characteristics of youth fade over time whereas intellectual disability tends to be lifelong. *People v. Coty*, 2020 IL 123972, ¶¶ 39-40. Accordingly, we construe defendant's successive postconviction petition as premised on his age, not mental disability or mental illness.

¶ 34                    B. Eighth Amendment *Miller* Claim

¶ 35 Defendant contends the State never argued that he failed to demonstrate cause for raising his eighth amendment *Miller* claim in his successive petition. Rather, the State argued that

defendant could not raise an eighth amendment *Miller* claim as a matter of law because he was 18 years old when he murdered Figueroa. Therefore, defendant concludes, the circuit court could not dismiss that claim based on failure to demonstrate cause.

¶ 36    It is true that the State's motion to dismiss argued that because defendant was 18 years old when he murdered Figueroa, as a matter of law, he could not raise an eighth amendment *Miller* claim. While the State did not frame this argument in terms of cause or prejudice, the State was correct. Eighth amendment *Miller* claims are not available to "emerging adults" who were 18 or older at the time of the offenses. *People v. Spencer*, 2025 IL 130015, ¶ 32. There is no dispute that defendant was 18 years old when he murdered Figueroa. So, as a matter of law, he cannot raise an eighth amendment *Miller* claim. See *id.*

¶ 37    The circuit court properly dismissed this claim. In ruling on the State's motion to dismiss, the circuit court advanced only defendant's proportionate penalties clause claim to the third stage, which implies that the court dismissed the eighth amendment *Miller* claim. Although the court did not explain its reasoning for dismissing the eighth amendment *Miller* claim, we can affirm its ruling on any basis in the record. See *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17. We affirm the dismissal of defendant's eighth amendment *Miller* claim because he cannot raise it as an adult offender.

¶ 38    Defendant acknowledges that, as an adult offender, he cannot raise an eighth amendment *Miller* claim. Nevertheless, he suggests that additional scientific evidence may justify extending *Miller* to young adult offenders. We disagree. Our supreme court holds that only juvenile offenders may raise eighth amendment claims under *Miller*. *Spencer*, 2025 IL 130015, ¶ 32. To the extent defendant asks us to change the law by extending *Miller* protections to offenders between 18 and

21, we decline that invitation. Any such extension of *Miller* "should be made by our legislature or our highest court." *People v. Rivera*, 2020 IL App (1st) 171430, ¶ 27.

¶ 39    We also reject defendant's argument that the circuit court violated his right to due process in dismissing his eighth amendment *Miller* claim. Defendant had the opportunity to respond to both of the State's motions but chose not to. Even if the circuit court did not follow proper procedures in dismissing defendant's eighth amendment *Miller* claim, that error was harmless because defendant cannot raise that claim as a matter of law. See *People v. Pingleton*, 2022 IL 127680, ¶¶ 51-64 (procedural due process errors in the circuit court's dismissal of a postconviction petition are harmless where the petition's claims lack merit). Accordingly, we affirm the dismissal of defendant's eighth amendment *Miller* claim.

¶ 40                              C. Proportionate Penalties Clause Claim

¶ 41    Because defendant was 18 years old when he murdered Figueroa, he may be able to raise a proportionate penalties challenge to his life sentence. See *Harris*, 2018 IL 121932, ¶ 48. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. But to raise that claim in his successive postconviction petition, he must demonstrate both cause and prejudice. See 725 ILCS 5/122-1(f) (West 2018).

¶ 42    It appears the trial court advanced defendant's successive postconviction petition to the second stage without conducting the cause and prejudice test, which was error. See *People v. Thames*, 2021 IL App (1st) 180071, ¶ 85. However, that error does not hinder our review. The State can seek dismissal based on the defendant's failure to establish cause at any stage in postconviction proceedings, so we can review cause on appeal from a second-stage dismissal.

*People v. Johnson*, 2019 IL App (1st) 153204, ¶ 37 ("even though the trial court advanced the petition to the second stage and made no cause and prejudice findings, we will review whether defendant established cause and prejudice"). Moreover, our review is *de novo* regardless of whether the circuit court denied defendant leave to file the successive petition due to his failure to show cause (see *People v. Bailey*, 2017 IL 121450, ¶ 13) or dismissed the petition at the second stage due to defendant's failure to make a substantial showing of a constitutional violation (see *Sanders*, 2016 IL 118123, ¶ 31). *De novo* review means that we perform the same analysis as the circuit court (*People v. Van Dyke*, 2020 IL App (1st) 191384, ¶ 41), which includes the cause and prejudice analysis.

¶ 43    To establish cause, a defendant must identify an objective factor that prevented him from raising his constitutional claim in his initial postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 48; 725 ILCS 5/122-1(f) (West 2018). That is, the defendant must articulate why he could not have discovered the claim earlier by exercising due diligence. *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 73.

¶ 44    We hold that defendant cannot make such a showing. Defendant could have raised a proportionate penalties clause challenge to his life sentence on direct appeal or in his initial postconviction petition. "Illinois cases have long held the proportionate penalties clause require[s] the circuit court to take into account the defendant's youth and mentality in fashioning an appropriate sentence." (Internal quotation marks omitted.) *Clark*, 2023 IL 127273, ¶ 92 (collecting cases dating to 1972). Even prior to *Miller* and the case law it produced, defendant "had the tools to construct a claim that his sentence violated the proportionate penalties clause because the sentencing judge did not take into account (1) his youth and (2) how his particular neurobiological

development affected his maturity and decision-making." See *People v. Leach*, 2024 IL App (4th) 230298, ¶ 83. Because proportionate penalties clause challenges to sentences have been available in Illinois for decades, our supreme court has held that *Miller* and the case law it produced do not provide cause to raise a proportionate penalties claim in a successive postconviction petition. *Spencer*, 2025 IL 130015, ¶ 31; *Clark*, 2023 IL 127273, ¶ 67; *Moore*, 2023 IL 126461, ¶ 40; *Dorsey*, 2021 IL 123010, ¶ 73. Therefore, defendant cannot establish cause based on the development of case law following *Miller*.

¶ 45     Defendant concedes that developments in case law do not establish cause to raise a proportionate penalties clause claim in a successive petition. Nevertheless, he insists that his cause for raising this claim is factual, not legal. But defendant's successive petition presents no new facts about his "youthful characteristics" at the time of the offense. On the contrary, defendant's successive petition recounts his troubled childhood, which was before the trial court at the 1981 sentencing hearing. Information that was available to the defendant and the court at sentencing does not constitute cause to raise a proportionate penalties challenge in a successive postconviction petition. See *Clark*, 2023 IL 127273, ¶ 63.

¶ 46     The only new information defendant's successive petition presents is scientific research on young adult brain development that did not exist at the time of his sentencing, direct appeal, or initial postconviction petition. Defendant argues that these studies provide a "factual basis" for cause.

¶ 47     Defendant characterizes these studies as "newly available evidence," which is confusing for two reasons. First, newly discovered evidence usually arises in successive postconviction petitions alleging actual innocence. See, *e.g.*, *People v. Griffin*, 2024 IL 128587, ¶ 58. A successive

postconviction petition based on actual innocence is different from a successive petition based on cause and prejudice. *People v. Hauad*, 2016 IL App (1st) 150583, ¶ 50. Here, defendant proceeds under the cause and prejudice approach, yet he uses terms more applicable to actual innocence claims.

¶ 48    Furthermore, newly discovered evidence typically consists of case-specific evidence that could have been introduced at trial and likely would have changed the outcome. See, *e.g.*, *Griffin*, 2024 IL 128587, ¶¶ 55-63 (witness affidavits were newly discovered evidence because they suggested the State's witnesses falsely identified the defendant as the shooter). General scientific studies with no connection to this defendant do not fit that description. See *People v. Green*, 2022 IL App (1st) 200749, ¶ 50 ("While he cites to studies on the brain of young adults, defendant did not provide any details connecting those studies to his own brain beyond his alleged intellectual disabilities."). More importantly, such studies do not provide cause to raise a proportionate penalties claim in a successive postconviction petition. See, *e.g.*, *People v. Brewer*, 2025 IL App (1st) 240088, ¶¶ 37-46 (defendant who committed first-degree murder when he was 18 years old did not demonstrate cause for raising a proportionate penalties challenge to his 80-year sentence by submitting studies indicating that 18 year-olds are mentally more like juveniles than adults); *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51 (new neuroscientific research can be "helpful support" for a proportionate penalties claim but is not cause to raise that claim in a successive postconviction petition). Therefore, defendant has not demonstrated cause for raising his proportionate penalties clause claim in his successive petition.

¶ 49    Defendant argues that, in the circuit court, the State did not contest his factual basis of cause for raising his proportionate penalties clause claim; rather, the State relied only on *Moore*'s

holding that developments in case law do not provide cause. Therefore, defendant concludes, the State has forfeited any argument that studies on young adult brain development do not constitute cause. But we review defendant's successive petition *de novo* (see *Bailey*, 2017 IL 121450, ¶ 13) and may affirm its dismissal on any basis apparent from the record (see *Snow*, 2012 IL App (4th) 110415, ¶ 17). As explained above, the record shows that defendant has not presented any new facts suggesting that his mental functioning was equivalent to a juvenile's when he murdered Figueroa.

¶ 50    Because we find that defendant has not established cause to raise his proportionate penalties claim in his successive postconviction petition, we need not address prejudice. See *People v. Morrow*, 2019 IL App (1st) 161208, ¶ 57 ("we may uphold the denial of leave to file the claim if defendant has failed to establish either prong" of the cause and prejudice test). We affirm the dismissal of defendant's proportionate penalties clause claim.

¶ 51                    D. Unreasonable Assistance of Postconviction Counsel

¶ 52    As an alternative to his cause and prejudice argument, defendant contends that postconviction counsel rendered unreasonable assistance by not (1) submitting additional affidavits or (2) attempting to overcome *Moore*'s holding that the development of case law stemming from *Miller* does not constitute cause to raise a proportionate penalties claim in a successive postconviction petition.

¶ 53    A postconviction petitioner does not have a constitutional right to assistance of counsel. *People v. Cotto*, 2016 IL 119006, ¶ 29. Nevertheless, postconviction counsel must provide reasonable assistance. *People v. Agee*, 2023 IL 128413, ¶ 41. Reasonable assistance is a

significantly lower standard than the constitutional right to effective assistance. *People v. Custer*, 2019 IL 123339, ¶¶ 30-31.

¶ 54 Supreme Court Rule 651(c) imposes certain duties on postconviction counsel to ensure reasonable assistance. *People v. Addison*, 2023 IL 127119, ¶ 20. Rule 651(c) requires postconviction counsel to submit a certificate or make a showing in the record that counsel has (1) consulted with the petitioner by phone, mail, electronic means, or in person to ascertain his or her contentions of deprivation of constitutional rights; (2) examined the record of the trial proceedings; and (3) made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The Rule ensures that postconviction counsel shapes a petitioner's claims into proper legal form and attempts to overcome any procedural bars that would result in the petition's dismissal if not rebutted. *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). That said, counsel need not advance meritless claims. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 55 In this case, postconviction counsel filed a Rule 651(c) certificate, which created a rebuttable presumption that postconviction counsel provided reasonable assistance. See *Addison*, 2023 IL 127119, ¶ 21. Defendant must overcome that presumption by showing that counsel did not substantially comply with Rule 651(c). See *id.* We review *de novo* whether postconviction counsel provided reasonable assistance. *People v. Williams*, 2025 IL 129718, ¶ 41.

¶ 56                                    1. Affidavits

¶ 57 Defendant argues that postconviction counsel did not submit an affidavit "verifying [the] *pro se* petition or providing any factual support from [defendant] beyond what existed in the underlying record."

¶ 58   A postconviction petition must be "verified by affidavit." 725 ILCS 5/122-1(b) (West 2018). Here, defendant and a notary signed the *pro se* successive petition's prayer for relief. This approach may not have complied with section 122-1(b), but there is no indication the circuit court dismissed the successive petition based on noncompliance with section 122-1(b). On the contrary, the court advanced defendant's petition to the second stage and then dismissed it on the merits. So, to the extent defendant complains that postconviction counsel did not ensure compliance with section 122-1(b), that did not affect defendant. See *People v. Buchanan*, 2024 IL App (1st) 221579-U, ¶ 52 (the circuit court "had an independent and sufficient basis to dismiss the petition's claims," so "postconviction counsel's failure to remedy the lack of a notarized verification affidavit was inconsequential.").[2]

¶ 59   Defendant also complains that postconviction counsel did not submit an affidavit from Dr. Garbarino. Defendant's briefs do not explain what information such an affidavit would have provided. Therefore, defendant has forfeited this argument. See *People v. Crowley*, 2025 IL App (1st) 241072-U, ¶ 31 (undeveloped arguments do not comply with Supreme Court Rule 341(h) (eff. Oct. 1, 2020) and are forfeited on appeal).

¶ 60                                              2. Cause

¶ 61   Finally, defendant contends that postconviction counsel rendered unreasonable assistance because he made no effort to overcome *Moore*'s holding. *Moore* holds that case law developments stemming from *Miller* do not provide cause for young adult offenders to raise proportionate penalties clause claims in successive postconviction petitions. See *Moore*, 2023 IL 126461, ¶ 40.

---

[2]We cite unpublished orders issued after January 1, 2021, as persuasive authority. Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025).

¶ 62 We reject this theory of unreasonable assistance. Postconviction counsel has no obligation to advance legally meritless claims. *Pendleton*, 223 Ill. 2d at 472. Defendant concedes that *Moore* barred him from establishing cause for his proportionate penalties claim based on developments in case law stemming from *Miller*. Defendant cannot rebut the presumption that postconviction counsel rendered reasonable assistance by insisting that counsel should have argued against binding supreme court authority. And, since the litigation that gave rise to this appeal, our supreme court has confirmed *Moore*'s holding. *Spencer*, 2025 IL 130015, ¶¶ 31-32. That confirms postconviction counsel could not have overcome *Moore*'s bar on defendant establishing cause.

¶ 63 Defendant contends that postconviction counsel should have argued that he sought to establish cause based not on developments in case law but based on scientific studies regarding young adult brain development. This argument would have failed for the reasons we set forth above, so postconviction counsel did not render unreasonable assistance by not raising it. Defendant has not rebutted the presumption that postconviction counsel rendered reasonable assistance. Accordingly, we affirm the dismissal of defendant's successive postconviction petition.

¶ 64                                        III. CONCLUSION

¶ 65 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 66 Affirmed.